## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**PHILIPPE CALDERON and
ANCIZAR MARI**N, on behalf of
themselves and all others similarly
situated,

                 Plaintiffs,

v.

**SIXT RENT A CAR, LLC, and SIXT
FRANCHISE USA, LLC,**

                 Defendants.

_____/

Civil Action No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs, PHILIPPE CALDERON and ANCIZAR MARIN ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following based upon personal knowledge as to themselves, upon information and belief, and the investigation of their counsel as to all other matters, bring this class action against Defendants, SIXT RENT A CAR, LLC, and SIXT FRANCHISE USA, LLC, (collectively "Sixt" or Defendants"), and state as follows:

### I.      Nature of the Action

1.    Plaintiffs bring this class action against Sixt, a discount luxury rental car company, for its common course of unlawful, deceptive, and fraudulent conduct, by uniformly, routinely, and systematically imposing unauthorized charges on Sixt's customers in breach of the rental contract with customers, in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") and in violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(9).

2.    Despite an aggressive pricing model for luxury vehicles, often less than half the

sticker price of its competitors, Sixt has maintained remarkable financial success in the United States. In 2017, Sixt reported financial data for United States for the first time since opening locations in the U.S. in 2011, recording revenue of $395 million USD, making it the fourth-largest car rental company in the U.S. within only 7 years of first operating in the U.S.[1]

3.      To help reach this milestone, Sixt has organized a company-wide scheme to systematically defraud consumers in the United States by charging unfair, deceptive, and unauthorized fees to customers in order to increase revenue, including but not limited to: (a) repair costs for alleged property damage to vehicles; (b) recovery/storage fees; (c) administrative fees; (d) loss of use costs; (e) engineer fees; (f) diminution of value charges; (g) appraisal fees; and (h) dunning charges.

4.      Therefore, this is a simple case of Sixt charging and collecting unauthorized fees and a class action is appropriate because Sixt's deceptive charges are uniformly charged and collected throughout the United States.  Sixt is responsible and liable for, among other things, the costs of returning all unauthorized fees charged and collected from consumers that are in violation of the FDUTPA and FCCPA. Additionally, injunctive relief is appropriate for those consumers who have been billed by Sixt for unlawful and unauthorized fees, but have not yet paid Sixt, yet Sixt contends that the unlawful fees are due and owing.

## II.      Jurisdiction and Venue

5.      The Court has jurisdiction over this action pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state other than Defendant's state of citizenship.

---

[1] https://www.autorentalnews.com/279248/sixt-records-2017-u-s-revenue-of-395-million.

2

This Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. §1367.

6.     In addition, the Court has jurisdiction over Defendants because Sixt's principal place of business and headquarters is in Fort Lauderdale, Florida.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because most of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Defendant is subject to personal jurisdiction in this District.

### III.     The Parties

8.     Plaintiff, Philipe Calderon, was and is an individual resident and citizen of Florida, at all times relevant to this action.

9.     Plaintiff, Ancizar Marin, was and is an individual resident and citizen of Florida, at all times relevant to this action.

10.     Defendant, Sixt Rent a Car, LLC, is a Delaware corporation and US-based subsidiary of its German parent company, Sixt SE.  Sixt Rent a Car, LLC is the primary entity responsible for Sixt's US vehicle rental operations, and is headquartered in Fort Lauderdale, Florida.

11.     Defendant, Sixt Franchise USA, LLC is a Delaware corporation and US-based subsidiary of its German parent company, Sixt SE.  Sixt Franchise USA, LLC is the primary entity responsible for Sixt's US franchising operations, and is headquartered in Fort Lauderdale, Florida.

12.     At all times material to this complaint, Sixt was a "debt collector" as defined under Fla. Stat. § 559.55(7), because Sixt regularly collects debts related to its car rental service by sending invoices to former customers asserting a legal right to collect fees for repairs made by

third-parties, recovery/storage fees, administrative fees, loss of use costs, engineer fees, diminution of value charges, appraisal fees; and dunning charges.

13.     At all times material herein, Plaintiffs and others similarly situated were "debtors" as defined by Fla. Stat. § 559.55(8) because they were natural persons who were obligated to pay for their Sixt car rental.

14.     At all times material herein, Plaintiffs' debt and the debt of others similarly situated were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6) because financial obligation arose from the obligation to pay Sixt for renting a vehicle from Sixt.

15.     Plaintiffs and Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7) because they are individuals.

16.     Sixt was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8) because it provided rental car services in Florida.

### IV.     Factual Allegations

### A.  Sixt's Rental Agreement

17.     Sixt alleges that its rental agreement contract with Plaintiffs and class members consists of two separate documents that together constitute the agreement: (1) the Face Page contract and (2) the Rental Jacket.

18.     First, Sixt's Face Page contract is a standard form contract that is utilized uniformly across all Sixt locations in Florida and throughout the United States.

19.     The standard form Face Page contract is the document that Plaintiffs and class members electronically sign at a Sixt staffed kiosk when picking up their rental vehicle.

20.     In addition to the rental charge and taxes, the Face Page contract does not delineate any fees that could be charged to consumers other than fuel fees, toll charges, parking violations,

traffic fines or penalties, a per mile fee for driving the vehicle outside of the designated region, and an administrative fee for processing any of those charges.

21.     The Face Page contract does not mention any potential damage charges, diminution in value charges, loss of use charges, appraisal or engineer fees, or any administrative fees associated with these fees/charges. Those fees/charges only appear in the Sixt Rental Jacket, which was not provided to Plaintiffs and Class members prior to signing the Face Page contract.

22.     Instead of explicitly enumerating the potential fees and charges Plaintiffs and Class members could be subject to in the Face Page contract, Sixt attempts to incorporate the Sixt Rental Jacket into its Face Page contract by reference:

> . . .By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement. . .

23.     Sixt's Rental Jacket is a standard form pamphlet that is utilized uniformly across all of Sixt's locations in Florida and the United States.  **Exhibit A**.

24.     Paragraph 5 of Sixt's standard form Rental Jacket enumerates purported authorized fees Sixt can charge consumers for damages to the vehicle:

> **5. Responsibility for Damage or Loss; Reporting to Police; for Tolls and Parking Violations.** You are responsible for all damage to, and for loss or theft of, the Vehicle including damage caused by weather, road conditions and acts of nature, even if you are not at fault. You are responsible for the cost of repair, or the actual cash retail value of the Vehicle on the date of the loss if the Vehicle is not repairable or if we elect not to repair the Vehicle. You are also responsible for Loss of Use (without regard to fleet utilization), Diminished Value, and our administrative expenses incurred processing a claim. You must report all accidents and incidents of theft and vandalism to us and the police as soon as you discover them. You are responsible for paying the charging authorities directly all parking citations, toll fees, fines for toll evasion, and other fees, fines and penalties assessed against you, us, or the Vehicle during this rental.

Exhibit A

25.     Paragraph 8 of the Rental Jacket provides for more charges and fees purportedly

applicable to customers:

> **8. Charges and Costs.** You will pay us at or before the conclusion of this rental, or on demand, all charges due us under this Agreement, including the charges and fees shown on the Face Page and (a) a mileage charge based on our experience if the odometer is tampered with; (b) any taxes, surcharges or other government-imposed fees that apply to the transaction; (c) all expenses we incur locating and recovering the Vehicle if you fail to return it, return it to a location or office other than the location or office identified by us, or if we elect to repossess the Vehicle under the terms of this Agreement; (d) all costs including pre- and post-judgment attorney fees we incur collecting payment from you or otherwise enforcing or defending our rights under this Agreement; (g) a reasonable fee not to exceed $350 to clean the Vehicle if returned substantially less clean than when rented or if there is evidence of smoking in our Vehicle; and (h) towing, impound, storage charges, forfeitures, court costs, penalties and all other costs we incur resulting from your use of Vehicle during this rental. . .

Exhibit A

26.     During the relevant time period for each respective Plaintiff and class members, Sixt's company-wide policy was to deliver the Rental Jacket to consumers only *after* they signed the Face Page contract binding them to rent the vehicle.

27.     The Rental Jacket's terms and conditions cannot be incorporated by reference into Plaintiffs' and Class members' Face Page contracts because Sixt failed to provide necessary access to the Rental Jacket terms as required by Florida law prior to them signing the Face Page contract.

28.     Florida's "incorporate by reference law" requires that consumers receive an incorporated document, or else be given clear direction on how to access it, *before* signing the agreement that allegedly incorporates that extrinsic document. *See Spicer v. Tenet Florida Physician Servs., LLC*, 149 So.3d 163, 166 (Fla. Dist. Ct. App. 2014).

29.     Sixt's Rental Jacket's terms, fees, and charges were not incorporated into Plaintiffs' Face Page contracts because Plaintiffs and Class members did not have access to or given instruction on how to access the Rental Jacket terms until after they signed the Face Page contract agreeing to rent the vehicle.

30.     Sixt possesses no contractual right to charge Plaintiffs and Class Members any of the fees, costs, or charges listed in the Rental Jacket because they are not subject to those terms under the Face Page contract.

31.     Sixt possessed no reason to attempt to incorporate the Rental Jacket's terms in the Face Page contract other than the motive to deceive consumers.

32.     Sixt did not want Plaintiffs and Class members to have access to or direction on how to access the Rental Jacket's terms or else Sixt would have Plaintiffs and Class members sign one transparent contract that does not require a scavenger hunt to find a complete list of terms and conditions.

**B.  Sixt Marks Up Pass Through Costs**

33.     Upon information and belief, Sixt marks up several pass-through fee costs to consumers to serve as a profit hub for its business, which is an unfair and deceptive practice in violation of Florida law.

34.     Florida Courts have held that charges that are purported to be pass-through charges for specific expenses, but are in fact profit generating fees disguised as costs, constitute violations of the FDUTPA. *Latman v. Costa Cruise Lines*, 758 So.2d 699 (Fla. Dist. Ct. App. 2000).

35.     Upon information and belief, Sixt provided Plaintiffs and Class members estimated repair costs, but do not actually pay that full amount over to the repair shop, which is Sixt's company-wide policy that is continuously repeated throughout the United States.

36.     Upon information and belief, Sixt systematically marks up diminution in value, loss of use charges, engineer fees, and administrative fees/costs, in excess of the actual cost to serve as a profit generator.

### C. European Union Consumer Protection Cooperation ("CPC")

37.     In 2016, due to the increase in the number of complaints concerning Sixt's business practices, the European Consumer Protection Cooperation ("CPC") engaged with Sixt to address the thousands of complaints concerning its rental vehicle damage charges, the terms and conditions of its contracts, and vehicle inspection procedures.

38.     Sixt proposed several changes to the CPC regarding its business practices to address the consumer complaints. **Exhibit B.**

39.     The CPC analyzed Sixt's changes to its post-rental inspection for vehicle damage that was supposed to now involve consumers in the process:

> Sixt has commenced a roll out of a new returns procedure whereby it will actively ask customers to attend a post rental inspection, as this should significantly reduce the number of post rental disputes about damage (under its previous returns procedure it would only carry out a post-rental inspection with the customer present if the customer requested it). . . Sixt expects to be able to implement this new process in all corporate countries and will use its best efforts to convince its franchisees to adopt the same procedures and standards.

Exhibit B

40.     Additionally, the CPC addressed Sixt's procedure for charging consumers for alleged damage to the vehicle:

> If the consumer denies responsibility for the damage and Sixt cannot provide strong evidence to the contrary, the consumer is not charged.

> Sixt will only charge the consumer's payment card for damage if they obtain a further express specific athorisation[sic] after the return of the vehicle. Sixt does not charge any administrative fee whatsoever.

> Furthermore, CPC authorities reiterate that consumers should be provided with clear information about the process for disputing damage charges both during the booking process, in the terms and conditions, at the rental desk and at any post-rental inspection where damage is identified.

Exhibit B

41.     The CPC authorities reviewed Sixt's changes to how it presents the Rental Jacket and Face Page contract to consumers in Europe:

> It is important that the full terms of rental are available to consumers who are making a booking and before they are bound by the contract—not doing so could potentially breach the transparency and good faith requirements of the UTD, or could result in terms being unfair, for example by reference to Annex paragraph 1(i) of the UTD (terms which irrevocably bind a consumer to terms which they have had no real opportunity of becoming acquainted with before the conclusion of the contract).

> The terms and conditions should also be written in plain and intelligible language so that they are easily understood by consumers. CPC authorities also reiterate that key terms and material information should be prominently highlighted to consumers during the booking process (together with the booking and pre-pay terms).

Exhibit B

42.     Sixt possesses knowledge and has been put on actual notice that its business practice of charging unauthorized fees that it employs in the United States are unfair and deceptive because Sixt has already been required by the CPC to modify these same practices in the European Union due to rampant consumer complaints.

43.     Sixt does not employ its CPC modified European Union procedures in the United States because it has not yet been subjected to regulatory scrutiny like it was in the European Union as a result of consumer complaints.

44.     There is no reason why Sixt currently employs, in Florida and the United States, the same deceptive and unfair business practices that the European Union CPC required Sixt to change, other than to exploit United States consumers under the same profitable scheme it collected monies on in Europe until the CPC required changes.

**D.  Sixt's Pricing Model**

45.     Sixt provides lower price offerings on vehicles as compared to its competitors,

which has driven its expansive growth since its initial operations in the United States began in 2011. For example, Hertz, a competing rental car company, advertised a Mercedes-Benz C300 for $89.85 (pay now) and $105.71 (pay later):



46.    Meanwhile, Sixt advertised a rate of $40.84, which was less than half of Hertz's price for the same vehicle class:



47.    It is little surprise that a potential renting consumer would be drawn to Sixt's enticing prices, thereby fueling Sixt's explosive growth in the United States since 2011.

48.    However, masked behind Sixt's strategically placed low rental prices lies a slew of systematic and routine hidden fees and predatory pricing practices that are concealed from consumers when they enter into to the Face Page contract.

### E.  Plaintiff Calderon's Sixt Rental

49.    In or around early 2016, Plaintiff Calderon completed a Sixt rental reservation transaction using Sixt's online website, www.sixt.com.

50.    Sixt's online website appears in the same website layout for each consumer in

Florida and the United States.

51.     Plaintiff Calderon subsequently received a standard form confirmation e-mail from Sixt that provided a reservation identification number.

52.     Plaintiff's standard form confirmation email did not contain a copy, link, or identify any contractual terms and conditions, including the Sixt Rental Jacket, nor did it delineate any potential administrative fees, diminution of value charges, loss of use costs, engineering fees, or potential fees associated with damages claims made on behalf of Sixt.

53.     On or around April 1, 2016, Plaintiff Calderon proceeded to the Sixt kiosk at the designated pick up location. Once at the kiosk, Plaintiff Calderon provided his reservation number from the confirmation e-mail, payment information, and proof of identity to the Sixt staff member.

54.     Next, Plaintiff Calderon was asked to digitally sign an electronic signature device that served as acceptance of the standard form Face Page Contract, which is part of Sixt's standard operating policy. **Exhibit C**

55.     Per Sixt's company-wide policy, at no point prior to signing the electronic signature device was Plaintiff Calderon or Class Members presented with, provided the opportunity to review, or given instructions on how to access the Sixt Rental Jacket.

56.     After Plaintiff Calderon signed the electronic signature device, the "Face Page" Contract receipt was printed, folded and placed within a folded paper envelope along with the keys to the rental vehicle.  The folded paper envelope was actually the Rental Jacket, which contained additional terms unknown to the consumer.

57.     The Face Page contract attempted to incorporate the Sixt "Rental Jacket" into the Face Page contract by reference:

. . .By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this

11

Agreement. . .

58.    Per Sixt's company-wide policy, the Rental Jacket, including its terms and conditions, was only given to Plaintiff Calderon along with the printed Face Page receipt agreeing to rent the vehicle, and along with the keys to the vehicle.  In other words, the Rental Jacket was only provided to Plaintiff Calderon, *after* signing the electronic signature component of the Face Page contract.

59.    Therefore, the Rental Jacket's terms were not legally incorporated by reference into the Face Page contract because Florida's "incorporate by reference law" requires that a consumer receive an incorporated document, or else be given clear direction on how to access it, *before* signing the agreement that allegedly incorporates that extrinsic document. *See Spicer v. Tenet Florida Physician Servs., LLC*, 149 So.3d 163, 166 (Fla. Dist. Ct. App. 2014).

60.    Sixt did not provide Plaintiff Calderon with the access to the terms contained in the Rental Jacket until after he signed his Face Page contract agreeing to rent the vehicle.

61.    Plaintiff Calderon's confirmation email from Sixt did not include access to the Rental Jacket, describe the Rental Jacket, or state where it could be found for review.

62.     It is an unfair and deceptive practice for Sixt to charge Plaintiff Calderon fees delineated in Sixt's Rental Jacket because the Rental Jacket was not legally incorporated by reference into the Face Page contract under Florida law and is therefore not a part of Plaintiff's rental agreement with Sixt.

63.    On April 4, 2016, Plaintiff Calderon returned his Sixt rental vehicle with no damage and in the same condition as when the vehicle was first picked up on or around April 1, 2016.

64.     Sixt did not perform any sort of post-return damage inspection or procedure with Plaintiff Calderon when he returned the vehicle.

12

65.     On or about April 14, 2016, Plaintiff received communications from Sixt alleging that the rental vehicle that Plaintiff had rented from Sixt sustained damage while in his possession and enclosed a form to be filled out regarding the alleged damage.

66.     Plaintiff denied Sixt's allegations of damages.

67.     Despite possessing no contractual authority to charge any Rental Jacket fees to Plaintiff Calderon, on January 18, 2017, nine months after Plaintiff Calderon's Sixt rental, the Doan Group allegedly performed a damage estimate for Sixt in the amount of $667.24 and charged a $25 appraisal fee.

68.     On or around January 30, 2017, Plaintiff Calderon received an email from Sixt outlining the total amount due for the alleged damage Plaintiff caused nine months earlier for a total amount of $631.65 broken down as follows:

| | |
|---|---|
| Repair costs per Doan Group: | $667.24 |
| Administrative Fee: | $170.00 |
| Diminished Value: | $166.81 |
| Loss of Use: | $102.60 |
| Estimate/ Appraisal Fee: | $25.00 |
| Total: | $1,131.65 |
| Partial Damage Waiver: | -$500.00 |
| Total Amount Due: | $667.24 |

#
69.     All of the charges Sixt alleged Plaintiff Calderon owed were included in the Rental Jacket and not the Face Page contract.

70.     In addition to charging fees not listed in the Face Page contract, each of the fees charged to Plaintiff Calderon are part of Sixt's routine and systemic practice of marking up the charges and presenting them to the consumer as pass-through charges.  These marked up charges constitute an additional revenue stream for Sixt in violation of Florida's unfair and deceptive trade practices act.

71.     Upon information and belief, as part of Sixt's repeated and systematic scheme, not

all of charges imposed on Plaintiff Calderon (including repair costs, estimates, and appraisal fees) were paid to any repair shop and instead the charges are simply a profit center for Sixt.

72.     Upon information and belief, Sixt repeatedly and uniformly marks up loss of use and diminished value charges above the fair market value to create a revenue source.

73.     Upon information and belief, Sixt's company-wide scheme includes arbitrarily determined administrative fees that are marked up from actual costs to create profits for Sixt.

74.     Sixt should be enjoined from further billing and collection of unauthorized charges from Plaintiff and the Class.

### F.   Plaintiff Marin's Sixt Rental

75.     On or about February 2019, Plaintiff Marin booked a Sixt rental car through third-party website Orbitz at www.orbitz.com.

76.     Plaintiff Marin subsequently received an online confirmation email with the reservation identification number.

77.     The confirmation email did not contain a copy, link, or instructions on where to locate the Sixt Rental Jacket, nor did it delineate any potential administrative fees, diminution of value charges, loss of use costs, engineering fees, or potential fees associated with damages claims made on behalf of Sixt.

78.      On or around March 5, 2019, Plaintiff Marin proceeded to the Sixt kiosk at the designated Sixt pick up location at the Phoenix Sky Harbor International Airport. Once at the kiosk, Plaintiff Marin provided his reservation number from the confirmation email, payment information, and proof of identity to the Sixt agent.

79.     Next, Plaintiff Marin was asked to digitally sign a black electronic signature device to accept the Face Page contract's terms and conditions. **Exhibit D**

14

80.     At no point prior to signing the black electronic signature device was Plaintiff Marin presented with, provided the opportunity to review, nor given instructions about where to locate the Sixt Rental Jacket.

81.     After Plaintiff Marin signed the electronic signature device, he was given the "Face Page" Contract receipt, which contained the purported governing contract terms.

82.     The Face Page contract attempted to incorporate the Sixt Rental Jacket into the Face Page contract by reference:

> . . .By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement. . .

83.     Per Sixt's company-wide systematic policy, the Rental Jacket was given to Plaintiff Marin, for the first time, after signing the electronic signature device of the Face Page contract. The Face Page contract was printed, folded, and placed into the pocket of the Rental Jacket along with the keys to the rental vehicle.

84.     The Rental Jacket's terms and conditions were not legally incorporated by reference into the Face Page contract and are inapplicable to Plaintiff Marin because Florida's "incorporate by reference law" requires that a consumer must receive an incorporated document, or else be given clear direction on how to access it, before signing the agreement that allegedly incorporates that extrinsic document. *See Spicer v. Tenet Florida Physician Servs., LLC*, 149 So.3d 163, 166 (Fla. Dist. Ct. App. 2014).

85.     Sixt did not provide Plaintiff Marin with the necessary access to the Rental Jacket until after he signed his Face Page contract.

86.     Plaintiff Marin's confirmation email did not include access to the Rental Jacket's terms and conditions or describe the rental jacket or state where it could be found for review.

87.     It is an unfair and deceptive practice for Sixt to charge Plaintiff Marin the Rental Jacket fees contained in its terms and conditions because the Rental Jacket's terms and conditions are not a part of Plaintiff's rental agreement with Sixt under Florida law.

88.     On or about March 7, 2019, Plaintiff Marin returned his Sixt rental vehicle with no damage to the Phoenix Sky Harbor International Airport Sixt location.

89.     On or around March 12, 2019, Plaintiff Marin received an email from Sixt alleging that Plaintiff's rented Sixt vehicle sustained damage during his rental period.

90.     Plaintiff denies Sixt's allegations of damages to the rental vehicle.

91.     Despite possessing no contractual authority to charge any Rental Jacket fees to Plaintiff Marin, on April 14, 2019, Plaintiff Marin received a standard form collection letter email from Sixt outlining the total amount due for the alleged damage Plaintiff caused for a total amount of $708.62 broken down as follows:

| | |
|---|---|
| Repair costs per invoice: | $519.00 |
| Loss of Use: | $114.62 |
| Administrative Fee: | $75.00 |

92.     All of the April 16, 2019 charges from Sixt to Plaintiff are improper and deceptive because Plaintiff Marin is not subject to the Rental Jacket Terms and conditions.

93.     None of the fees Sixt billed Plaintiff Marin for were included in the terms of the Face Page contract that Plaintiff Marin agreed to, they were all included in the Sixt Rental Jacket, which is inapplicable to Plaintiff.

94.     Upon information and belief, each of the fees charged to Plaintiff Marin are part of Sixt's routine and systemic business practice of marking up the charges and presenting them to the customer as pass-through costs, when in fact these costs are simply an additional revenue stream in violation of the FDUTPA.

95.     Upon information and belief, as part of Sixt's repeated and systematic scheme, not all of Plaintiff Marin's alleged repair costs (including estimate, repair, loss of use, and administrative fees), were paid over to the repair shop, and instead the chargers were marked up by Sixt and served as a profit center for Sixt in violation of the FDUTPA.

96.     Upon information and belief, Sixt repeatedly and uniformly marks up loss of use charges above the fair market value to create a revenue source.

97.     Upon information and belief, Sixt's company-wide scheme includes arbitrarily determined administrative fees that are marked up from actual costs to create profits for Sixt.

98.     Plaintiff's insurance company, Allstate paid Sixt $519.00 for damages.

99.     Plaintiff Marin paid Sixt 189.62 out of pocket for unauthorizes charges for loss of use and administration fees. Plaintiff Marin paid these amounts to avoid credit issues with nonpayment.

100.     Sixt's standard form collection letter sent to Plaintiff Marin violates the Florida Consumer Collection Practices Act ("FCCPA"). **Exhibit E**

101.     Sixt's standard form Collection letter knowingly asserts the right to "claim damage compensation from you as per the rental contract you agreed to." However, nowhere in the Face Page contract Plaintiff and the Class signed is there an authorization for these charges. As addressed above, the Sixt Rental Jacket's terms and conditions were not incorporated into the Face Page contract as a result of Sixt's failure to provide Plaintiff and the Class with the terms of the Rental Jacket prior to signing the Face Page contract.

102.     Sixt's standard form Collection Letter knowingly requests that the outstanding amount to be paid no later than 4/30/2019, despite possessing no legal right to charge and collect that amount.

103.    Sixt contemplated that the dunning amount would be paid by Plaintiff by dedicating an entire page of the bill to credit card payment information.

104.    Plaintiff suffered actual damages as a result of Sixt charging amounts it has no authority to collect on.

105.    Sixt does not fall within any debt collector exception of the FCCPA.

106.    Sixt should disgorge all unauthorized amounts it has collected from Plaintiff and the class and be enjoined from further billing and collection of unauthorized fees.

**V.      Class Action Allegations**

107.    Plaintiffs seek to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Procedure. The proposed class (the "National Class") is defined as follows:

> **SIXT DIRECT RESERVATION CLASS:** All persons and entities that completed a Sixt rental reservation directly with Sixt whose (a) rental confirmation email did not contain Sixt's Rental Jacket's Terms and Conditions; (b) received the Sixt Rental Jacket after signing the Face Page receipt at the staffed Sixt kiosk, and (c) were subsequently billed for fees contained in the Sixt Rental Jacket's Terms and Conditions.

> **SIXT DIRECT RESERVATION FLORIDA SUBCLASS:** All persons in the state of Florida that completed a Sixt rental reservation directly with Sixt whose (a) rental confirmation email did not contain Sixt's Rental Jacket's Terms and Conditions; (b) received the Sixt Rental Jacket after signing the Face Page receipt at the staffed Sixt kiosk; and (e) were subsequently billed for fees contained in the Sixt Rental Jacket's Terms and Conditions.

> **ONLINE THIRD-PARTY CLASS:** All persons and entities that completed a Sixt rental reservation online through any third-party whose (a) rental confirmation email did not contain Sixt's Rental Jacket's Terms and Conditions; (b) received the Sixt Rental Jacket after signing the Face Page receipt at the staffed Sixt kiosk; (c) were subsequently billed and paid for fees contained in the Sixt Rental Jacket's Terms and Conditions.

> **ONLINE THIRD-PARTY FLORIDA SUBCLASS:** All persons in the state of Florida that completed a Sixt rental reservation online

through any third-part whose (a) rental confirmation email did not contain Sixt's Rental Jacket's Terms and Conditions; (b) received the Sixt Rental Jacket after signing the Face Page receipt at the staffed Sixt kiosk; and (c) were subsequently billed for fees contained in the Sixt Rental Jacket's Terms and Conditions.

**2019 COLLECTION LETTER CLASS**: All persons in the State of Florida who received a Collection Letter from Sixt substantially similar or materially identical to Exhibit E within the two years prior to filing the initial complaint in this action.

Collectively the Sixt Online Class, Sixt Online Third-Party Class, 2019 Collection Letter Class, and the corresponding Florida Subclasses are referred to herein as the "Class." Expressly excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

108.    Plaintiffs reserve the right to amend the Class(es) definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

## Rule 23(a) Criteria

109.    **Numerosity.** The exact number of Class members is unknown as such information is in the exclusive control of Defendants. However, due to the nature of the trade and commerce involved, Plaintiffs believe the Class consists of easily thousands of consumers, geographically dispersed throughout the United States and within the state of Florida, making joinder of all Class members impracticable. Class members are ascertainable from review of Sixt's business records.

110.    **Commonality.** Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiffs and Class members. The harm that Sixt has caused or could cause is substantially uniform with respect to Class members.

Common questions of law and fact that affect the Class members include, but are not limited to:

(a)     Whether Defendants provided Plaintiffs and the Class with Sixt's Rental Jacket's Terms and Conditions prior to signing the Face Page contract;

(b)     Whether Sixt's Rental Jacket's Terms and Conditions are applicable;

(c)     Whether Sixt knew, or should have known, that they were sending collection letters for amounts set forth only in the Rental Jacket;

(d)     Whether Sixt's practice of charging fees set forth in the Rental Jacket's Terms and Conditions violated the Florida Unfair and Deceptive Trade Practices Act;

(e)     Whether Sixt marks up pass through charges in violation of the FDUTPA;

(f)     Whether Sixt's 2019 Collection Letter violates the FCCPA, (specifically Florida Statute §§ 559.72(9) by asserting legal rights Sixt knows do not exist;

(g)     Whether members of the public were likely to be deceived by Sixt's representations and billing practices; and

(h)     Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

Commonality is also shown by the attached **Exhibit F** which contains numerous online complaints from consumers concerning the above-mentioned common practices by Sixt:

> I rented a BMW from Sixt (first time I used them) and returned it without any issue. When I returned the car, they took the car and nobody said a word. I 100% did not get in any accident, hit anything, etc. while I had the car. The next thing I know I get a letter saying I damaged the car and owed them over $800. I have categorically denied this several times in writing and they keep badgering me.[2]

---

[2] www.bbb.org/south-east-florida.

20

> I returned the car and the guy walked around the car and told me everything looks great and i [sic] went on my way. Two weeks after that i [sic] get a call from them stating there is a damage to the tire and i [sic] have to pay $250.[3]

> 4 months after my Sixt West Palm Beach rental I received an email with more than $400 dollars in charges due to a defective tire on my rental.[4]

> After returning the car, I was handed my invoice and left. A few weeks later, I received a letter stating that there was damage on the car's rear bumper and they asked me to send a response stating my side of the story. Weeks later, and after receiving no response from them, I received an email from Alternative Claims management stating that I needed to pay over $700 for the damage. The damage could not have been inflicted while I had the car because I simply used it to go to my brother's house and then back to the airport.[5]

111.    **Typicality.** The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class because they were all charged fees that they did not agree to because they were contained in Sixt's Rental Jacket.  Additionally, Sixt has uniformly marked up what appear to be pass-through fees that are charged to consumers. Plaintiffs have suffered damages of the same type and the same manner as the Class it seeks to represent, and are similarly affected by Sixt's wrongful conduct. There is nothing peculiar about Plaintiffs' claims. Indeed, Plaintiffs' claims are typical of the claims of other class members.

112.    **Adequacy of Representation.** The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class:

---

[3] www.yelp.com/biz/sixt-rent-a-car-west-palm-beach-5?osq=Sixt+rent+a+car.

[4] www.yelp.com/biz/sixt-rent-a-car-west-palm-beach-5?start=20.

[5] www.yelp.com/biz/sixt-rent-a-car-fort-lauderdale?osq=Sixt+rent+a+car.

(a)     Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

(b)     Plaintiffs have no conflict of interest that will interfere with the maintenance of this class action.

### Rule 23 (b) Criteria

113.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons which is superior to the alternative methods involved in individual litigation:

114.    The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems. Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct.

115.    Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

116.    Despite the costly nature of the fees charged to Plaintiffs and Class members, the claims of the individual Class members are, nevertheless, small in relation to the expenses of individual litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

117.    For Plaintiffs and Class members who refused to pay Sixt for the unlawful fees and markups they were billed for, injunctive relief under 23 (b)(2) is proper because Sixt has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate with respect to the class as a whole to prevent further harm from repetitive deceptive and unfair billing of unauthorized charges from Sixt, and to eliminate the outstanding amounts allegedly owed.

<u>**Tolling of any Applicable Statutes of Limitations**</u>

118.    For the reasons set forth herein, Plaintiffs and putative members of the Class are within the applicable statute of limitation for the claims presented here. Sixt failed to provide an opportunity to review the Rental Jacket's Terms and Conditions prior to signing the Face Page contract, therefore Defendant concealed the fees that it seeks to charge Plaintiffs until after the Face Page was signed. Additionally, upon information and belief, Sixt concealed that it marked up pass through costs it charged to Plaintiffs. Defendants are estopped from asserting any statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

## VI.    CAUSES OF ACTION

<u>**COUNT I**</u>
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**FLA. STAT. § 501.201, *et seq.***
**Rental Jacket Fees**
**(On Behalf of All Classes)**
#

119.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-118 above, as if set forth herein in full.

120.    Plaintiffs and Class Members are "consumers" within the meaning of Fla. Stat. § 501.203(7) because they are individuals.

121.    Sixt was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8) because it provided rental car services in Florida.

122.    Sixt failed to provide Plaintiffs and the Class Members an opportunity to access or give clear direction on how to access the Sixt Rental Jacket's Terms and Conditions prior to Plaintiffs and Class members signing the Face Page contract, which attempts to incorporate the Sixt Rental Jacket as part of the total agreement.

123.    Sixt only provided the Rental Jacket Terms and Conditions after Plaintiffs and Class Members signed the Face Page contract agreeing to rent the vehicle.

124.    Because Plaintiffs and Class Members were not given an opportunity to access or given clear direction on how to access the Sixt Rental Jacket's Terms and Conditions prior to signing the Face Page contract, the Rental Jacket's Terms and Conditions are not included in the Face Page receipt agreement and are not binding on Plaintiffs or members of the Class.

125.    Plaintiffs and Class members signed the Face Page contract without knowledge of the Rental Jacket's terms and conditions.

126.    The Face Page contract is the only governing contract, exclusive of the Rental Jacket Terms and Conditions, as the provisions set forth in the Rental Jacket are not applicable to Plaintiffs and Class members.

127.    Despite not being included as terms of the Face Page contract, Sixt charged Plaintiffs and Class Members fees contained in the Sixt Rental Jacket and which are  not contained in the Face Page contract including, but not limited to: damage repair charges, loss of use fees, administrative fees, engineer fees, towing fees, estimate/appraisal fees, and diminution in value.

128.    Additionally, Sixt misrepresented the obligation to pay the fees by withholding Plaintiffs' and Class Members' access to the Rental Jackets until after the Face Page contract was signed. This conduct constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices within the meaning of Fla. Stat. § 501.204, *et seq*.

129.     Reasonable consumers, like Plaintiffs and Class Members, would be deceived by Sixt's conduct in charging the Rental Jacket's fees and other fees not disclosed in the Face Page contract.

130.     As described above, Plaintiffs and the Class suffered damages because they were charged and paid fees they were not obligated to pay and were deceived into believing that the Rental Jacket's fees were applicable to them by providing the Rental Jacket after Plaintiffs signed the Face Page contract.

131.     Defendants caused Plaintiffs' and Class Members' damages because any fees not included in the Face Page contract are inapplicable, which can be measured with specificity based upon the amount Plaintiffs were charged for.

132.     As a result of Sixt's misrepresentations, Plaintiff Marin and Class Members suffered actual damages within the meaning of Fla. Stat. § 501.211, because Plaintiff Marin and Class Members were billed for amounts not in the Face Page contract, including fees in the Sixt Rental Jacket. Sixt deceived Plaintiff Marin and his corresponding Florida and National Class into paying the unauthorized fees, and will continue to cost Plaintiff and the Class monies as long as the scheme continues.

133.     Plaintiff Calderon refused to pay Sixt for the unauthorized fee's but has suffered actual damages and is an "aggrieved parties" as defined by FDUTPA Fla. Stat. § 501.211(2) by continuously being threatened and billed for unauthorized charges.  His credit scores are potentially at risk of lowering due to the unauthorized fees being charged to him and injunctive relief is appropriate to prevent Sixt from further billing and collection efforts.

<u>**COUNT II**</u>
**Breach of Contract**
**(On Behalf of the Sixt Direct Reservation Class and**
**Sixt Direct Reservation Florida Subclass)**

134.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 118, as if set forth fully herein.

135.    Plaintiff Calderon and Class Members contracted with Sixt online for a rental car and later signed the Face Page contract when they picked up the rental vehicle. **Exhibit C**

136.    Plaintiff Calderon and Class Members are not subject to the Rental Jacket's Terms and Conditions because they were not provided access to or directions of where to locate the Rental Jacket prior to signing the Face Page contract.

137.    Plaintiff Calderon and Class members performed all conditions precedent to filing this action.

138.    The Face Page contract governs the only fees and charges Sixt can charge Plaintiff and Class members.

139.    Sixt breached the Face Page contract because Plaintiff Calderon and Class members were charged amounts that were not included in the Face Page contract.

140.    As a direct and proximate result of Sixt's breach, Plaintiff Calderon and Class members have been harmed by being charged amounts that they are not required to pay due to Sixt's failure to include such amounts in its Face Page Contract.  The Rental Jacket's terms and conditions are not incorporated into the Face Page contract because Sixt failed to provide an opportunity to access or identify where they could access the Rental Jacket.

## COUNT III
### Breach of Contract
### (On Behalf of the Online Third-Party Class and
### Online Third-Party Florida Subclass)#

141.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 118, as if set forth fully herein.

142.    Plaintiff Marin and Class Members contracted with Sixt for a rental car through third-party online vendors, and signed the Face Page contract when they picked up the rental vehicle. **Exhibit D**

143.    Plaintiff Marin and Class Members are not subject to the Rental Jacket's Terms and Conditions because they were not provided access to or directions of where to locate it prior to signing the Face Page contract.

144.    Plaintiff Marin and Class Members performed all conditions precedent to filing this action.

145.    The Face Page contract governs what fees and charges Sixt can charge Plaintiff Marin and Class Members.

146.    Sixt breached the Face Page receipt contract because Plaintiff Marin and Class Members were charged amounts that were not included in the Face Page contract.

147.    As a direct and proximate result of Sixt's breach, Plaintiff Marin and Class Members have been harmed by being charged and paying amounts that are not included in the Face Page contract.  The Rental Jacket's terms and conditions are not incorporated into the Face Page contract because Sixt failed to provide an opportunity to access or identify where they could access the Rental Jacket.

#
#

27

#
#
<u>**COUNT IV**</u>
**Florida Consumer Collections Practices Act ("FCCPA")**
**Fla. Stat. § 559.72 (9)**
**(On Behalf of the 2019 Collection Letter Class)**

148.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-118

above, as if set forth herein in full.

149.    At all times material to this complaint, Sixt was a "debt collector" as defined under

Fla. Stat. § 559.55(7), because Sixt regularly collects debts related to its car rental service. For

example, Sixt sent bills to Plaintiff Marin and Class members seeking to recover diminished value

and the costs of alleged repairs made by third-parties, who Sixt allegedly paid for these services.

150.    At all times material herein, Plaintiff Marin and others similarly situated were

"debtors" as defined by Fla. Stat. § 559.55(8) because they were natural persons who were

obligated to pay for their Sixt car rental.

151.    At all times material herein, Plaintiff Marin's debt and the debt of others similarly

situated were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6) because financial

obligation arose from the obligation to pay Sixt for renting a vehicle from Sixt.

152.    The FCCPA, section 559.72(9) provides:

In collecting consumer debts, no person shall:
(9) <u>Claim, attempt, or threaten to enforce a debt when such person knows that the debt is</u>
<u>not legitimate</u>, or assert the existence of some other legal right when such person knows
that the right does not exist.
Fla. Stat. § 559.72(9) (emphasis added).

153.    The billing letters sent to Plaintiff Marin and others similarly situated by Sixt were

an attempt to collect a debt. **Exhibit E**

154.    However, Sixt had no legal right to seek collection of any amounts that were not

authorized in the Face Page contract.

28

155.    Sixt sent Plaintiff Marin and the Class collection letters seeking to collect for amounts not authorized in the Face Page contract.

156.    Sixt had knowledge that it was attempting to collect a debt that was not authorized by the Face Page contract, and was not legitimate.

157.    By attempting to collect unauthorized charges, Sixt violated Fla. Stat. § 559.72(9) by claiming and attempting to enforce a debt which was not legitimate and not due and owing.

158.    As a direct and proximate result of Sixt's FCCPA violation, Plaintiff Marin and others similarly situated have been harmed.  Plaintiffs and the Class are entitled to actual damages, statutory damages and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

**<u>COUNT V</u>**
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**FLA. STAT. § 501.201, *et seq.***
**(On Behalf of the All Classes)**
#

159.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 118, as if set forth fully herein.

160.    Plaintiffs and Class Members are "consumers" within the meaning of Fla. Stat. § 501.203(7) because they are individuals.

161.    Defendants were engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8) because Sixt engages in the rental car business in Florida.

162.    Sixt misrepresents the true nature and purpose of costs of damage repair estimates, loss of use fees, diminution of value, appraisal fees, and administrative costs charged to Plaintiffs and Class Members. Sixt employs a company-wide scheme that portrays these fees as pass-through costs that have been paid to third parties.  In fact, Sixt does not pay the entire amount charged for repairs and appraisal fees over to third-party repair shops. On information and belief, Sixt regularly pockets the amounts charged and does not repair the rental vehicles whatsoever.

163.    Additionally, Sixt marks up the diminution in value, loss of use, and administrative costs in excess of the pass-through costs actually incurred to create an additional hidden profit component for Sixt.

164.    This conduct constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices within the meaning of Fla. Sta. § 501.204, *et seq*.

165.    A reasonable consumer, like Plaintiffs and class members, would be deceived by Sixt's conduct in charging marked up pass-through costs for the charges because the charges appear to be charges paid to third parties to repair damage to the rental vehicle and for time the rental vehicle was unable to be rented as a result of the repairs.

166.    As described above, Plaintiffs and the Class suffered damages because they paid or were invoiced for amounts in excess of the true cost Sixt pays or incurs for damage repairs, loss of use, diminution of value, appraisal fees, and administrative costs. Plaintiffs and the class have been damaged in that they paid or are currently being asked to pay more than the actual costs incurred by Sixt for what appear to be pass-through charges.

167.    Because Sixt charges and collects amounts in excess of the actual amount it pays to third-parties for such fees and costs, Sixt caused Plaintiffs and Class Members damages, which are actual damages within the meaning of Fla. Stat. § 501.211.

168.    Additionally, those Plaintiffs and Class Members that have yet to pay the amounts invoiced by Sixt for the marked-up fees and costs, are "aggrieved parties" within the definition or Fla. Stat. § 501.211(1), and are therefore entitled to injunctive relief to stop Sixt's unfair and deceptive practices.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Sixt as follows:

A.  Enter an order certifying the proposed Classes, designating Plaintiffs as the Class representatives, and designating the undersigned as Class counsel;

B.  Declare that Sixt is financially responsible for notifying all Class members;

C.  Declare that Sixt must disgorge, for the benefit of the Class, the ill-gotten profits it received from charging unauthorized fees;

D.  For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

E.  For actual damages sustained, as allowed by law;

F.  For punitive or exemplary damages;

G.  For injunctive and declaratory relief;

H.  For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action pursuant to the FDUTPA and FCCPA; and

I.1  For such other and further relief as this Court deems just and appropriate.#

**<u>Jury Demand</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 26th day of September, 2019.

VARNELL & WARWICK, P.A.

/s/ BRIAN W. WARWICK
BRIAN W. WARWICK, FBN: 0605573
JANET R. VARNELL, FBN: 0071072
P.O. BOX 1870
LADY LAKE, FL 32158
TELEPHONE: (352) 753-8600

31

FACSIMILE:  (352) 504-3301
*bwarwick@varnellandwarwick.com*
*jvarnell@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

**GORDON & DONER, P.A.**

/s/ STEVEN G. CALAMUSA
STEVEN G. CALAMUSA, FBN: 992534
4114 NORTHLAKE BOULEVARD
PALM BEACH GARDENS, FL  33410
TELEPHONE:  (561) 799-5070
FACSIMILE:  (561) 799-4050
vfdodp xvdC iruwkhlqmxuhg1frp
VJ F 1sdndg1qjvC iruwkhlqxuhg1frp #
#
*Attorneys for Plaintiffs*