UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-62408-CIV-WILLIAMS

PHILIPPE CALDERON AND ANZICAR     .
MARIN, on behalf of themselves and all     .
others similarly situated,     .
                                    .
      Plaintiffs,     .
                                    .
v.     .
                                    .
SIXT RENT A CAR, LLC AND SIXT     .
FRANCHISE USA, LLC,     .
                                    .
      Defendants.     .

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF CALDERON'S CLAIMS AND FOR ORAL ARGUMENT

---

**FISHERBROYLES, LLP**

Irene Oria, Esq.
FL Bar No. 484570
FisherBroyles, LLP
199 E. Flagler St. #550
Miami, FL 33131
Tel.: (786) 536-2838
irene.oria@fisherbroyles.com

Patrick M. Emery, Esq. (admitted *pro hac vice*)
FisherBroyles, LLP
945 East Paces Ferry Rd NE
Suite 2000
Atlanta, GA 30326
(404) 793-0652
patrick.emery@fisherbroyles.com

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 3

     A.      Calderon's Agreement To Rent A Car From Sixt in Florida. ................................ 3

     B.      The Rental Agreement Obligated Calderon To Pay For Charges And Costs
            Associated With Any Damage To The Vehicle That Occurred During His Rental.
            .................................................................................................................. 4

     C.      Sixt's Request That Calderon Pay Charges For Damage To The Rental Car. ....... 5

     D.      Calderon's Claims Against Sixt Rent A Car .......................................................... 6

     E.      Calderon's Claims Against Sixt Franchise. .......................................................... 7

III.    ARGUMENT ........................................................................................................ 7

     A.      Standard of Review ............................................................................................... 7

     B.      Calderon's Breach Of Contract Claim Should Be Dismissed. .............................. 8

           1.      Calderon's Contract Claim Fails Because He Does Not Identify Any Term
                 Of The Rental Agreement That Was Breached. ......................................... 8

                 i.      Calderon's Contract Claim Fails Because Sixt Had A Contractual
                       Right To Charge Him For Damage To The Rental Car .................. 8

                       a.      The Terms And Conditions Of The Rental Jacket Were
                           Incorporated By Reference Into The Face Page Of The Rental
                           Agreement…………………………………………………….9

                       b.      The Terms And Conditions Of The Rental Jacket Were
                           Incorporated By Reference Into The Face Page Of The Rental
                           Agreement…………………………………………………...14

                 ii.     Sixt Did Not Breach Any Term Of The Face Page By Trying To
                       Collect Charges For Damage To The Rental Car, And Had A
                       Common Law Right To Seek Those Charges ............................... 15

            2.      Calderon's Contract Claim Fails Because He Has No Damages ............. 16

     C.      Calderon's FDUTPA Claims Should Be Dismissed............................................ 16

           1.      Calderon's FDUTPA Claims Fail Because He Has No Actual Damages
                 And Fails To Allege Causation............................................................... 16

2.     Calderon's FDUTPA Claims Fail To Allege Any Actionable Conduct... 17

D.    Calderon's Claims Against Sixt Franchise Should Be Dismissed Because He Fails To Allege Any Facts That Might Support A Claim Against Sixt Franchise. ....... 19

IV.    CONCLUSION............................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Access Telecom, Inc. v. Numaxx World Merchs., LLC*

      No. 1:13-CV-20404, 2013 WL 12108129 (S.D. Fla. Nov. 25, 2013) ............................ 13

*Ashcroft v. Iqbal*

      556 U.S. 662 (May 18, 2009) ...................................................................................... 7, 8

*Avatar Props., Inc. v. Greetham*

      27 So. 3d 764 (Fla. 2d DCA 2010) ................................................................................. 9

*Badillo v. Hill*

      570 So. 2d 1067 (Fla. 5th DCA 1990) ........................................................................... 15

*Bell Atl. Corp. v. Twombly*

      550 U.S. 544 (May 21, 2007) .......................................................................................... 8

*Brush v. Miami Beach Healthcare Grp. Ltd.*

      238 F. Supp. 3d 1359 (S.D. Fla. 2017) ........................................................................... 8

*Cornette v. I.C. Sys.*

      280 F. Supp. 3d 1362 (S.D. Fla. Nov. 30, 2017) .......................................................... 16

*DBI Servs. LLC v. Shorter*

      No. 4:16-cv-127MW/CAS, 2017 U.S. Dist. LEXIS 204340 (N.D. Fla. May 1, 2017).... 19

*Degirmenci v. Sapphire – Fort Lauderdale, LLLP*

      693 F. Supp. 2d 1325 (S.D. Fla. Feb. 1, 2010) .............................................................. 16

*Greenberg v. Doctors Assocs., Inc.*

      338 F. Supp. 3d 1280 (S.D. Fla. 2018) ......................................................................... 10

*Guaniro Zamora v. Ace Am. Ins. Co.*

      Case No. 17-23201-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 147583

      (S.D. Fla. Aug. 27, 2019) ............................................................................................... 11

*Guerrero v. Target Corp.*

     889 F. Supp. 2d 1348 (S.D. Fla. 2012) ............................................................ 16

*Gulf Coast Turf & Tractor LLC v. Kubota Tractor Corp.*

     No. 817CV2787T24AEP, 2019 WL 1586710 (M.D. Fla. Apr. 12, 2019) ...................... 10

*Kelly v. Palmer, Reifler, & Assocs., P.A.*

     681 F. Supp. 2d 1356 (S.D. Fla. 2010) ............................................................ 18

*Luna v. Alamo Rent-A-Car, LLC*

     No. 06-60453-CIV, 2006 WL 8432203 (S.D. Fla. Jul. 21, 2006) ................................. 12

*Mantz v. TRS Recovery Servs.*

     No. 12-81039-CIV, 2012 U.S. Dist. LEXIS 193580 (S.D. Fla. Oct. 30, 2012) .............. 16

*Maor v. Thrifty Auto. Group, Inc.*

     Case No. 15-222959-CIV-MARTINEZ-GOODMAN, 2018 WL 4698512

     (S.D. Fla. Sept. 30, 2018) ............................................................................... 15

*Mesa v. Bos. Portfolio Advisors, Inc.*

     No. 15-21087-Civ-COOKE, 2015 U.S. Dist. LEXIS 92549 (S.D. Fla. Jul. 16, 2015) .... 18

*Meterlogic, Inc. v. Copier Sols., Inc.*

     126 F. Supp. 2d 1346 (S.D. Fla. 2000) ............................................................ 20

*Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*

     743 So. 2d 627 (Fla. 1st DCA 1999) ............................................................ 9, 10

*OBS Co., Inc. v. Pace Const. Corp.*

     558 So.2d 404 (Fla. 1990) ............................................................................ 9, 12

*Open Sea Inv., S.A. v. Credit Agricole Corp. & Inv. Bank*

     No. 17-22366, 2018 WL 1120902 (S.D. Fla. Jan. 12, 2018) ................................. 13

*Spicer v. Tenet Fla. Physician Servs., LLC*

     149 So. 3d 163 (Fla. 4th DCA 2014) ............................................................ 9, 12

*Stonebraker v. Reliance Life Ins. Co. of Pittsburgh*

    166 So. 583 (Fla. 1936) .......................................................................... 13

*Tara Woods SPE, LLC v. Cashin*

    116 So. 3d 492 (Fla. 2d DCA 2013) ..................................................... 13

*Trent v. Mtg. Elec. Registration Sys., Inc.*

    618 F. Supp. 2d 1356 (M.D. Fla. 2007) ............................................... 19

*Williams v. Nationwide Credit, Inc.*

    890 F. Supp. 2d 1319 (S.D. Fla. 2012) ................................................. 18

**Statutes**

Fla. Stat. § 501.204(1) .................................................................................. 18

Fla. Stat. § 501.201 ........................................................................................ 6

Fla. Stat. § 501.203(8) .................................................................................. 18

**Rules**

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1

## I.      **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Sixt Rent a Car, LLC ("Sixt") and Sixt Franchise USA, LLC ("Sixt Franchise") hereby move to dismiss the claims asserted by Plaintiff Philippe Calderon ("Calderon") in the Complaint with prejudice.

Calderon rented a car from Sixt in Florida. In order to rent the car, Calderon signed the face page of a rental agreement. By signing the face page, Calderon expressly agreed to the terms and conditions of the rental jacket, and acknowledged that he had an opportunity to review those terms before signing the agreement. Under the rental agreement, Calderon was responsible for costs and charges resulting from any damage to the vehicle during the rental. After he returned the rental car, Sixt advised Calderon the car was damaged during his rental. Plaintiff denied damaging the car. Sixt later sent Calderon a letter and invoice asking that he pay certain charges for damage to the vehicle. Calderon did not pay any of the charges. Sixt did not pursue the charges any further.

More than two years later, Calderon filed suit alleging breach of contract (Count II) and two purported violations the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Counts I and V). Calderon's claims fail as a matter of law.

**Calderon's contract claim should be dismissed because (1) he fails to identify any term of the rental agreement that was breached, and (2) he has no damages.** Calderon's allegation that Sixt breached the rental agreement by asking him to pay repair charges is refuted by the express terms of the agreement. Calderon's contract claim is based on his incorrect theory that the agreement was solely comprised of the face page, and did not include the rental jacket. This Court and other judges in this District have held that the rental jacket is part of a car rental agreement. Under well-settled Florida law, the rental jacket was incorporated by reference into the agreement because the face page Calderon signed (1) specifically provided that the agreement was subject to

the terms and conditions of the rental jacket, and (2) sufficiently described the rental jacket such that the parties' intent to be bound by its terms is ascertainable. Sixt, therefore, cannot have breached the agreement by seeking to collect charges for damage to the vehicle that it had a right to recover under the rental jacket. Moreover, Sixt had a contractual right to ask him to pay such charges because the face page also provided that Calderon was responsible for all damage to the vehicle, nothing in the face page barred Sixt from recovering for damage to the vehicle, and Sixt had a common law right to recover such charges. No matter whose interpretation of the agrement controls, Sixt could not have breached it merely by asking Calderon to pay these charges.

Calderon's contract claim also fails because he admits that he did not pay any of the charges. Therefore, Count II of the Complaint should be dismissed for his failure to allege a breach and/or for his failure to allege any damages.

**Calderon's FDUTPA claims fail as a matter of law because he did not incur any actual damages**. Again, Calderon admits that he did not pay the charges about which he complains. The missing causation and damages elements doom his FDUTPA claims.

**Additionally, neither of Calderon's FDUTPA claims allege any actionable conduct because (1) Sixt had a contractual right to claim the charges for damage to the vehicle, and (2) Sixt was not engaged in "trade or commerce" when it sent him a letter claiming those charges.** Calderon's FDUTPA claim in Count I is based on a fundamental misunderstanding of Florida's doctrine of incorporation by reference. Calderon complains that Sixt misrepresented his obligation to pay repair charges by not giving him the rental jacket until after he signed the face page. But Florida law does not require a party to physically receive the incorporated document prior to execution for its terms to be binding. Calderon's express agreement to the rental jacket's terms was sufficient. Regardless of whether that incorporation was effective – which it was – he

cannot have been deceived because, as he represented by his signature, he had notice of and an opportunity to review the rental jacket's terms. Because Sixt had a contractual right to recover charges for damage to the vehicle under the terms that were incorporated into the agreement, it cannot have violated FDUTPA by asserting its rights.

Calderon's FDUTPA claims in Counts I and V allege that Sixt violated FDUTPA by making alleged misrepresentations in its letter asking him to pay for repair charges. However, this Court and many other Florida courts have held that efforts to collect a debt cannot give rise to a FDUTPA claim because sending a demand letter does not involve "trade or commerce"—*i.e.*, advertising, soliciting, providing, offering, or distributing a good or service. Therefore, Calderon's FDUTPA claims concerning that letter fail as a matter of law.

Additionally, Calderon fails to assert a viable claim against Sixt Franchise. He does not allege that he entered into a contract with Sixt Franchise or that he interacted with Sixt Franchise at all. Calderon cannot sue Sixt Franchise just because it is an affiliate of Sixt.

Accordingly, the Court should grant this Motion and dismiss all of Calderon's claims under Counts I, II, and V with prejudice.[1]

## II.     FACTUAL BACKGROUND

### A.     Calderon's Agreement To Rent A Car From Sixt in Florida.

Calderon rented a car from Sixt in Florida between April 1 and 4, 2016. Complaint [Dkt. 1] ("Compl.") ¶¶ 53, 54, 63. When he arrived at the Sixt kiosk, in order to rent the car, Calderon

---

[1] In addition to this Motion to Dismiss Calderon's claims, Defendants are filing a motion to compel arbitration of Plaintiff Anzicar Marin's claims in Counts I, III, IV, and V. If both motions are granted, there will be no claims left for the Court to adjudicate. Defendants reserve the right to move to compel arbitration of Calderon's claims should they later discover evidence that his claims are subject to an arbitration agreement. Defendants also reserve their rights to compel arbitration of the claims of any putative class members.

was asked to sign an electronic version of the "Face Page of Contract No. 9336235480." Compl. ¶ 54, Ex. C [Dkt. 1-5] (the "Face Page"). A complete copy of the Face Page is attached hereto as Exhibit 1. Calderon had an opportunity to review the terms of the Face Page before he signed it. *See* Compl. ¶ 54. After Calderon signed the Face Page, a copy of the Face Page was printed, folded, and placed into a rental jacket. *Id.* at ¶ 56. Calderon was handed those contract documents along with the keys to the vehicle. *Id.* A copy of a what Calderon alleges is the rental jacket is attached to the Complaint as Exhibit A (the "Rental Jacket"). *See* Compl. ¶ 23, Ex. A [Dkt. 1-3].

Together, the Face Page and the Rental Jacket comprise the "Agreement" covering Calderon's rental. *See* Face Page at 2, Rental Jacket ¶ 1. By signing the Face Page, Calderon agreed to the Terms and Conditions of the Rental Jacket:

> **By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement.**

*See* Face Page at 2 (emphasis added). *See also* Rental Jacket ¶ 1. The cover of the Sixt Rental Jacket is titled "**Terms and Conditions Rental Jacket**," and the first page contains the heading "**Rental Agreement Terms and Conditions**." *See id.* at 1-2 (emphases in original).

Additionally, Calderon expressly affirmed that he had an opportunity to read the Terms and Conditions of the Rental Jacket before he signed the Face Page:

> **You acknowledge that you have been given an opportunity to read this Agreement before being asked to sign it, and that all information you have provided is true and correct.**

Face Page at 2 (emphasis added). The Face Page and the Rental Jacket are collectively referred to herein as the "Rental Agreement."

**B.    The Rental Agreement Obligated Calderon To Pay For Charges And Costs Associated With Any Damage To The Vehicle That Occurred During His Rental.**

Under the Rental Agreement, Calderon was responsible for all damage to the vehicle that

occurred during the rental. *See* Face Page at 1; Rental Jacket ¶¶ 1, 6. Specifically, the Rental Jacket stated that he was responsible for the "cost of repair," Loss of Use, Diminished Value, and administrative expenses incurred in processing a claim, as well as "all other costs [Sixt] incur[red] resulting from [Calderon's] use of the Vehicle during this rental." Rental Jacket ¶¶ 5, 8.[2] Calderon was obligated to pay those charges on demand or, if Sixt paid those charges, to reimburse Sixt for all such charges. *See id.* at ¶ 8. Because Calderon agreed to purchase Partial Damage Waiver (or "PDW") for his rental, Sixt agreed to waive his responsibility for the first $500 of damage to, or loss of, the vehicle. *See* Face Page at 1; Rental Jacket ¶¶ 1, 6.

**C.     Sixt's Request That Calderon Pay Charges For Damage To The Rental Car.**

Calderon alleges that he returned the rental car without any damage on April 4, 2016. Compl. ¶ 63. Plaintiff avers that, on April 14, 2016, he "received communications from Sixt alleging that the rental vehicle that Plaintiff had rented from Sixt sustained damage while in his possession and enclosed a form to be filled out regarding the alleged damage." *Id.* at ¶ 65. Plaintiff denied that he damaged the vehicle. *Id.* at ¶ 66. Doan Group later performed a damage assessment for Sixt, for which it estimated the cost or repairs to be $667.24 and charged a $25 appraisal fee. *Id. at* ¶ 67. On January 30, 2017, Plaintiff received correspondence from Sixt in which it asked him to pay an invoice itemizing the following charges for damage to the vehicle Sixt alleged occurred during his rental (the "Claim Letter"):

---

[2] "Loss of Use" means the "loss of [Sixt's] ability to use the Vehicle for any purpose (including, but not limited to non-rental uses …) due to damage to or loss of the Vehicle during your rental." Rental Jacket ¶ 1. "Diminished Value" means the "difference between the value of the of the Vehicle immediately prior to damage or loss, and the value of the Vehicle after repair or replacement." *Id.*

| Item | Amount |
|---|---|
| Repair Costs per Engineer Report [from the Doan Group] | $667.24 |
| Administrative Fee | $170.00 |
| Diminution of Value | $166.81 |
| Loss of Use Costs | $102.60 |
| Engineer Fee [*i.e.*, the Doan Group appraisal fee] | $25.00 |
| Partial Damage Waiver | -$500.00 |
| **Sum** | **$631.65** |

*Id.* at ¶ 68. A copy of the Claim Letter, the invoice from Sixt, the estimate report, and the appraisal invoice, are attached hereto as Exhibit 2. The Complaint admits that "[a]ll of the charges Sixt alleged Plaintiff Calderon owed were included in the Rental Jacket." Compl. ¶ 69.

Calderon refused to pay Sixt any of the charges it claimed. *Id.* at ¶ 133. Calderon does not allege that his credit card was charged, that Sixt filed a credit report, or that Sixt did anything to recover the charges after sending the Claim Letter. *Id.*

**D.      Calderon's Claims Against Sixt Rent A Car.**

More than two years after he received the Claim Letter, Calderon filed this putative class action Complaint against Defendants along with Marin. [Dkt. 1.] Calderon personally asserts three claims for breach of contract and under FDUTPA, Fla. Stat. §§ 501.201, *et seq*. *See* Compl. ¶¶ 49-74 (allegations specific to Calderon's rental); *id.* at ¶¶ 119-113 (Count I – FDUTPA); *id.* at ¶¶ 134-140 (Count II – Breach of Contract); *id.* at ¶¶ 159-168 (Count V – FDUTPA).[3]

Count II alleges that Sixt breached the Rental Agreement by trying to charge him for repairs

---

[3] Both Plaintiffs assert claims under Counts I and V. Count II is brought solely by Calderon. Counts III and IV are brought solely by Marin.

to the vehicle. *See Id.* at ¶¶ 139-140.

Count I alleges that Sixt violated FDUTPA because it "failed to provide [Calderon] … an opportunity to access or give clear direction on how to access the Sixt Rental Jacket's Terms and Conditions prior to [Calderon] … signing the Face Page," and "provided the Rental Jacket Terms and Conditions after [Calderon] … signed the Face Page." *See id.* at ¶¶ 122-123. Count I further alleges that Sixt violated FDUTPA by sending Calderon communications misrepresenting that he had a contractual obligation to pay the charges listed in the Rental Jacket. *See id.* at ¶ 128.

Count V alleges that Sixt violated FDUTPA by sending communications asking Calderon to pay certain charges. *See id.* at ¶¶ 162-167. Calderon alleges that these charges were marked up and presented to him as "pass through charges." *Id.* at ¶ 70. He asserts that "not all of [the] charges … were paid to any repair shop and instead the charges [were] simply a profit center for Sixt." *Id.* at ¶ 71. He further alleges that the Loss of Use and Diminished Value charges were marked up to serve as a "revenue source" and that the Administrative Fee was "arbitrarily … marked up from actual costs to create profits. *Id.* at ¶¶ 72-73.

## E.    Calderon's Claims Against Sixt Franchise.

Despite including Sixt Franchise as a Defendant, the Complaint does not contain any specific factual allegations about Sixt Franchise. The parties to the Rental Agreement include Calderon and Sixt Rent A Car. *See* Face Page at 1; Rental Jacket ¶ 1. Sixt Franchise is not a party to that agreement. *See id.* Also, Sixt Rent A Car sent the communications about which Calderon complains. Compl. ¶ 68; Mot. Ex. 2. Sixt Franchise is not included on that correspondence. *See id.*

## III.   <u>ARGUMENT</u>

## A.    Standard of Review.

Under the familiar standard for deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court evaluates whether the complaint

states a "claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation" and "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-79. Thus, a complaint fails to state a claim if it "tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.      Calderon's Breach Of Contract Claim Should Be Dismissed.**

To properly plead a contract claim under Florida law, the plaintiff must allege facts showing: (1) a valid contract existed between the parties; (2) a material breach by the defendant; and (3) that plaintiff sustained damages as a result of the breach. *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1366 (S.D. Fla. 2017) (affirming dismissal of a contract claim). Calderon's contract claim fails as a matter of law because (1) he fails to allege a breach of any term of the Rental Agreement, and (2) he did not suffer any damages.

**1.      Calderon's Contract Claim Fails Because He Does Not Identify Any Term Of The Rental Agreement That Was Breached.**

Calderon alleges that Sixt breached the Rental Agreement because (1) in his view, the agreement was comprised of the Face Page alone, and (2) Sixt invoiced him for charges that were not included on the Face Page. Calderon's contract claim fails to allege a breach because Sixt had a legal right to recover those amounts no matter what documents comprised the parties' agreement.

**i.      Calderon's Contract Claim Fails Because Sixt Had A Contractual Right To Charge Him For Damage To The Rental Car.**

Because the Face Page expressly incorporated by reference the Terms and Conditions of

the Rental Jacket, Sixt could not have breached the Rental Agreement by asserting its rights under the Rental Jacket's terms to recover for damage to the vehicle.

### a. The Terms And Conditions Of The Rental Jacket Were Incorporated By Reference Into The Face Page Of The Rental Agreement.

Under Florida law, "it is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document … is to be interpreted as part of the writing." *OBS Co., Inc. v. Pace Const. Corp.*, 558 So.2d 404, 406 (Fla. 1990). To incorporate a document by reference, the agreement must: (1) "specifically provide that it is subject to the incorporated [collateral] document"; and (2) the "collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement so that the intent of both parties may be ascertained." *Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So. 3d 163, 166 (Fla. 4th DCA 2014) (citations, internal quotation marks, and emphasis omitted). "It is sufficient if the general language of the incorporating clause reveals an intent to be bound by the terms of the collateral document." *Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999). Florida courts "routinely approve[] the enforcement of contractual provisions that were incorporated by reference into a contract that parties have signed…." *Avatar Props., Inc. v. Greetham*, 27 So. 3d 764, 766 (Fla. 2d DCA 2010).

Both requirements for incorporating a document by reference are satisfied here. First, the Face Page specifically provides that the Rental Agreement is subject to the Terms and Conditions of the Rental Jacket: "By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement." *See* Face Page at 2. The Face Page incorporated the Terms and Conditions of the Rental Jacket in several other places as well. *See id.* at 1 (providing that Calderon's agreement to purchase PDW was "subject to the terms of Paragraph 5 of the Terms and Conditions…"); *id.* at 2 (providing that

Calderon would pay an administrative fee each time he used an express toll lane "according to the terms of Paragraphs 4 and 4a of the Terms and Conditions."); *id.* at 2 (indicating that the details of Calderon's enrollment in the Sixt Express Master Agreement "are explained in Paragraph 13 of the Terms and Conditions and elsewhere on the rental jacket."). Therefore, the first element of incorporation by reference is satisfied here.

Second, the Face Page sufficiently described the collateral document containing the Terms and Conditions as the "rental jacket." *See* Face Page at 2. Just so, the Rental Jacket states on its front cover that it is the "Terms and Conditions Rental Jacket," and it does contain the Terms and Conditions for the rental. *See id.*; Rental Jacket ¶ 1. Additionally, as the Complaint acknowledges, the Rental Jacket literally is a "jacket" for the rental agreement documents: a printed copy of the Face Page was folded and placed within a folded copy of the Rental Jacket, which contained the Terms and Conditions. Compl. ¶ 56. The Rental Jacket could not be anything other than the Rental Jacket Calderon admits he received at the time of his rental. *Id.* at ¶ 56. Therefore, the Face Page sufficiently described the Rental Jacket in such a manner that the parties' contractual intent to rent the car subject to its Terms and Conditions is ascertainable, and the Rental Jacket's terms are part of the Rental Agreement. *See Mgmt. Computer Controls*, 743 So.2d 631 (holding "MC License Agreement" that was provided after the sales contract was executed was incorporated by reference by sales contract's statement that "[a]ny MC License Agreement governing the use of and normally packaged with any MC software is incorporated herein by reference, as though fully set forth"); *Gulf Coast Turf & Tractor LLC v. Kubota Tractor Corp.*, No. 817CV2787T24AEP, 2019 WL 1586710, at *2 (M.D. Fla. Apr. 12, 2019) (ruling that sales agreement incorporated "KTC Materials" because sales agreement stated that plaintiff "agrees to be bound by all of the terms and conditions of any KTC Materials"); *Greenberg v. Doctors Assocs., Inc.*, 338 F. Supp. 3d 1280,

1281–83 (S.D. Fla. 2018) (concluding that plaintiff agreed to an arbitration provision in Terms and Conditions because he accepted an offer that referenced "Terms and Conditions").

This Court recently held that a rental jacket was part of a car rental agreement in *Guaniro Zamora v. Ace Am. Ins. Co.*, Case No. 17-23201-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 147583, *4 (S.D. Fla. Aug. 27, 2019) (Williams, D.J.). In *Zamora*, the plaintiffs filed an action seeking a declaration of the limits under the uninsured/underinsured motorist ("UM") coverage they purchased with their car rental from Alamo. *Id.* at *1. The plaintiffs demanded $1 million in UM coverage under Alamo's policy with ACE American Insurance Company because, *inter alia*, they were not directly offered such coverage as required by statute. *Id.* at *1, 6-7. The defendants argued that Alamo properly made UM coverage available and the cover plaintiffs accepted was capped at $100,000 under the rental jacket's terms. *Id.* This Court agreed with the defendants based on its finding that, "when Plaintiff rented the vehicle, Plaintiff agreed to be bound by the 'Rental Agreement Jacket,' which limited UM coverage to $100,000 per accident." *Id.* at *4, 8, 10.[4] The legal effect of signing the rental agreement was that it incorporated the terms of the rental jacket, including the UM coverage limit: "by signing the rental agreement, Plaintiff Zamora agreed that UM coverage was limited to $100,000 per accident and rejected any additional UM coverage." *Id.* at *10. This Court should reach the same conclusion with respect to Calderon's Rental Agreement.

Contrary to Calderon's argument, *Spicer* did not hold that a party must "receive an incorporated document, or else be given clear direction on how to access it, before signing the agreement." Compl. ¶¶ 28, 59. In reality, *Spicer* observed that "cases finding sufficient description

---

[4] Similar to Calderon's Rental Agreement, the rental agreement in *Zamora* provided that "You agree to all provisions contained within this agreement, including those contained within Alamo's rental agreement jacket and all applicable optional product brochures, and you acknowledge receipt of each of them." *See* Case No. 1:17-cv-23201-KMW [Dkt. 1-1 (Complaint) Ex. A at 2].

of a collateral document to create an incorporation by reference involve more detailed descriptions of the collateral document, *or* where the document could be found." 149 So. 3d at 167 (citation omitted; emphasis added). A detailed description of the collateral document is sufficient to incorporate its terms by reference, and that standard is met here. *See id.*[5]

Calderon's argument that a party must receive the incorporated document prior to execution was rejected in a highly analogous case involving a car rental agreement by a Court in this District. *See Luna v. Alamo Rent-A-Car, LLC*, No. 06-60453-CIV, 2006 WL 8432203, at *5 (S.D. Fla. Jul. 21, 2006). In *Luna*, the plaintiff filed a putative class action raising claims concerning Alamo's practice of charging a refueling service charge when a rental car is returned without a full tank of gas or a prepaid full tank of gas. *Id.* at *1. The defendant moved to dismiss the action based on a forum selection clause found in a rental jacket. The Alamo rental agreement stated that Luna "agree[d] to all provisions contained within this Agreement including those contained within Alamo's Rental Agreement Jacket and all applicable option product brochures, and you acknowledge receipt of each of them." *Id.* at *2. Luna argued that rental jacket's terms were unenforceable because he "never received the Rental Agreement Jacket" and, instead, received a different rental jacket that did not contain a forum selection clause. *Id.* at *4. The Court rejected Luna's argument and held that, "whether or not Plaintiff received the proper Rental Jacket Agreement at the time of his rental, … Plaintiff signed a Rental Agreement that specifically stated he was agreeing to all provisions contained in Alamo's Rental Agreement Jacket." *Id.* at *5 (citing *OBS Co.*, 558 So. 2d at 406). As a result, this District Court enforced the forum selection clause

---

[5] By contrast, in *Spicer*, the employment contract vaguely referred to a "Tenet Fair Treatment Process" that was part of a separate document, the "Open Door and Fair Treatment Policy," which was not referenced in the employment contract, and the employee had no opportunity to review that policy document until seventeen days after she executed the contract. 149 So. 3d at 166–167.

of the Alamo rental jacket. *Id.* Calderon's Rental Agreement commands the same result here.

Accordingly, it does not matter whether Calderon physically received a copy of the Rental Jacket before he signed the Face Page. *See Luna*, 2006 WL 8432203, at *5. *See also Avatar*, 27 So. 3d at 766-67 (enforcing arbitration provision contained in home warranty that was "not attached to the agreement," because plaintiffs had opportunities to ask for home warranty and "[a]ny failure on the part of the owners to avail themselves of either opportunity [is] not a basis to find that no agreement existed"); *Open Sea Inv., S.A. v. Credit Agricole Corp. & Inv. Bank*, No. 17-22366, 2018 WL 1120902, at *4 (S.D. Fla. Jan. 12, 2018) (enforcing arbitration provision in "Terms and Conditions" of which plaintiff "never received a copy," because plaintiff "signed the Application and specifically acknowledged receiving the Terms and Conditions, which includes an arbitration provision"). This is consistent with the hornbook rule that "parties to a contract, in the absence of fraud, accident, or mistake, will be conclusively presumed to know and understand the contents, terms, and conditions of the contract." *Stonebraker v. Reliance Life Ins. Co. of Pittsburgh*, 166 So. 583, 584 (Fla. 1936); *Access Telecom, Inc. v. Numaxx World Merchs., LLC*, No. 1:13-CV-20404, 2013 WL 12108129, at *7 (S.D. Fla. Nov. 25, 2013) (same). By signing the Face Page agreeing to the Terms and Conditions of the Rental Jacket, Calderon is "assumed to have known, and [is] charged with the knowledge, of the provisions incorporated into the contract [he] executed." *Tara Woods SPE, LLC v. Cashin*, 116 So. 3d 492, 501–02 (Fla. 2d DCA 2013). Calderon was not required to receive the Rental Jacket before execution for his rental to be subject to its terms. *Luna*, 2006 WL 8432203, at *5.

Similarly, Calderon's immaterial and patently false allegation that he did not have an opportunity to review the Rental Jacket before execution, Compl. ¶ 55, must be rejected. Foremost, by signing the Face Page, Calderon expressly "acknowledge[d]" that he had "been given an

opportunity to read this Agreement," which is defined to include the Terms and Conditions of the Rental Jacket, "before being asked to sign it." *See* Face Page at 2.[6] Calderon is bound by his affirmative representation that he had an opportunity to read the Rental Jacket regardless of whether he availed himself of that opportunity. *Stonebraker*, 166 So. at 584. Moreover, Calderon's allegation is contradicted by his admission that he received the Rental Jacket immediately after he signed the Face Page. Compl. ¶ 56. Common sense dictates that, if Calderon wanted to read the Terms and Conditions, all he had to do was ask for a copy of the Rental Jacket. Regardless of whether he read the terms, Calderon's rental became subject to the Rental Jacket's terms upon his execution of the Face Page. *See Avatar*, 27 So. 3d at 766-67 (plaintiff's failure to ask for home warranty when they could have done so was "not a basis to find that no agreement existed").

b. Under The Rental Jacket's Terms, Sixt Had A Right To Impose The Charges About Which Calderon Complains.

The Rental Jacket provides that, in event the vehicle is damaged during the rental, Calderon is responsible for the cost of repair, loss of use, diminished value, and administrative expenses incurred by Sixt, as well as "all other costs [Sixt] incur[red] resulting from [his] use of the Vehicle during this rental." *See* Rental Jacket ¶¶ 5, 8. Calderon was obligated to pay those charges on demand or, if Sixt paid those charges, to reimburse Sixt for all such charges. *See id.* The invoice that forms the basis of Calderon's contract claim sought to recover those charges. *Id.* at ¶¶ 68, 139, 140. Calderon admits that "[a]ll of the charges Sixt alleged Plaintiff Calderon owed were included in the Rental Jacket." *Id.* at ¶ 60. Because Calderon had an obligation to pay those charges, Sixt cannot be held liable for exercising its right to demand that Calderon pay those charges and his contract claim should be dismissed. *See Maor v. Thrifty Auto. Group, Inc.*, Case No. 15-222959-

---

[6] The Complaint tellingly omits this key language from the Face Page via ellipses. *See* Compl. ¶¶ 22, 57.

CIV-MARTINEZ-GOODMAN, 2018 WL 4698512, at *5 (S.D. Fla. Sept. 30, 2018) (holding that rental car company could not have breached a contract by charging certain fees that customer expressly agreed to pay).

> ### ii.   Sixt Did Not Breach Any Term Of The Face Page By Trying To Collect Charges For Damage To The Rental Car, And Had A Common Law Right To Seek Those Charges.

Plaintiff's contract claim also fails under his theory that the contract is limited to the Face Page. The Face Page provides that Calderon agreed to be liable for damage he caused to the vehicle. He "agree[d] to purchase and pay for PDW [Partial Damage Waiver]," which "does not cover all instances of damage to the Vehicle," and under which Sixt agreed to "waive [Calderon's] responsibility for the first $500 of damage to, or loss of, the Vehicle." *See* Face Page at 1. Sixt, therefore, had a contractual right to recover its losses associated with damage to the vehicle from Calderon. *Id.* No term of the Face Page barred Sixt from trying to collect amounts from him for the damage he caused. Stated differently, Sixt made no promises in the Face Page about what it would or would not try to collect from Calderon if the car was damaged. In addition to its rights under the Rental Agreement, Sixt had a legal right to ask Calderon to pay for the damage he caused to its property and could have sued him to recover those same losses under common law theories. *See, e.g.*, Restatement (Second) Torts § 928 and cmts. a and b (chattel owner can recover damages for diminution of value, repair costs, loss of use, expenses, and other resulting losses) (followed by *Badillo v. Hill*, 570 So. 2d 1067, 1068 (Fla. 5th DCA 1990)).

Irrespective of whether the Rental Jacket's terms are part of the contract, Count II should be dismissed because Calderon fails to identify any term of the Rental Agreement that was breached. *Brush*, 238 F. Supp. 3d at 1366-67 (contract claim "must be dismissed 'where it is unclear what provision or obligation under the contract has been violated.'") (citation omitted).

### 2.      Calderon's Contract Claim Fails Because He Has No Damages.

Calderon's contract claim fails to allege any damages. Calderon alleges that, months after his rental, Sixt breached the Rental Agreement by asking him to pay various charges. Compl. ¶¶ 139, 140. Calderon does not allege that he paid those charges, and does not allege that Sixt charged his credit card. In fact, Calderon admits that he "refused to pay Sixt for the unauthorized fee[s]." *Id.* ¶ 133. In other words, Calderon's contract claim is founded on the transmission of an invoice that he did not pay. Because he has not actually suffered a cognizable injury, Calderon's breach of contract claim in Count II fails as a matter of law and should be dismissed. *See Degirmenci v. Sapphire – Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1346-47 (S.D. Fla. Feb. 1, 2010) (dismissing contract claim with prejudice because plaintiff failed to allege any damages); *Cornette v. I.C. Sys.*, 280 F. Supp. 3d 1362, 1375 (S.D. Fla. Nov. 20, 2017) (granting summary judgment and dismissing contract claim for failure because plaintiff who did not pay allegedly unauthorized collection fee did not establish any damages).

### C.      Calderon's FDUTPA Claims Should Be Dismissed.

To establish a FDUTPA claim, Plaintiff must allege facts demonstrating "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012) (granting motion to dismiss FDUTPA claim because plaintiff failed to provide factual support for allegations of deception). Calderon's FDUTPA claims fail as to each element.

### 1.      Calderon's FDUTPA Claims Fail Because He Has No Actual Damages And Fails To Allege Causation.

Regardless of his allegations about the Sixt Rental Agreement and its business practices, Calderon's FDUTPA claims fail as a matter of law because he admits that he did not suffer any actual damages. When Sixt allegedly sent Calderon an invoice for repairs to the rental car,

- 16 -

Calderon refused to pay the charges about which he complains. Compl. ¶¶ 68, 133. Because Calderon does not identify any actual damages that resulted from the alleged conduct, his FDUTPA claims should be dismissed. *See Mantz v. TRS Recovery Servs.,* No. 12-81039-CIV, 2012 U.S. Dist. LEXIS 193580, at *8 (S.D. Fla. Oct. 30, 2012) (dismissing FDUTPA claim for lack of actual damages) ("Merely labeling an amount of damages as 'actual' is conclusory and insufficient to maintain a cause of action on its own.").

### 2.    Calderon's FDUTPA Claims Fail To Allege Any Actionable Conduct.

Calderon's FDUTPA claims are based on the following conduct: (1) Sixt's claiming charges based on the Rental Jacket's terms that were incorporated into the Rental Agreement (Count I); and (2) Sixt's attempt to charge him "pass-through costs," which were marked up or not actually passed through, by sending him an email demanding payment (Counts I and V). Neither theory states a viable FDUTPA claim.

**First, with respect to Count I, Calderon fails to identify anything that is deceptive or unfair about the manner in which the Rental Jacket's terms were incorporated.** It is permissible to incorporate terms by reference into a contract under Florida law. *OBS*, 558 So. 2d at 406. A decade before Calderon's rental, a judge in this District determined that, under Florida law, a rental car company can enforce the terms of a rental jacket when the customer signs a contract expressly agreeing to the rental jacket's terms—even when the customer alleges that he never received the rental jacket. *See Luna*, 2006 WL 8432203, at *5. There was nothing deceptive or unfair about the contracting process in this case because the Face Page satisfied the requirements for incorporating the rental jacket's terms by reference. *See id.* Moreover, Calderon is deemed to have had knowledge of the rental jacket's terms because he was on notice of the terms and affirmed that he had an opportunity to review them—which he did. *See*, *supra*, Section II.B.1.i. Contrary to Calderon's conclusory allegations, nothing more was required to incorporate the rental jacket's

Terms and Conditions by reference under Florida law. *See id.* Sixt had a contractual right, as well as common-law right, to impose the charges at issue, and thus did not "misrepresent" Calderon's contractual obligation to pay such charges. *See* Compl. ¶ 128. Because Calderon cannot assert a FDUTPA claim based on Sixt's method of contracting and its communications seeking to recover such charges, his claim under Count I should be dismissed.

**Second, with respect to Counts I and V, the collection communications Calderon received long after his rental cannot form the basis of liability under FDUTPA.** FDUTPA only concerns the conduct of "trade or commerce," which "means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property…." Fla. Stat. §§ 501.203(8), 501.204(1). By the time the communications at issue were sent, the rental transaction was already completed and Sixt was attempting to collect charges owed under the Rental Agreement. Compl. ¶ 68. Sixt's requests for payment did not involve any kind of advertising, soliciting, providing, offering, or distributing a good or service that might be actionable under FDUTPA. Fla. Stat. §§ 501.203(8), 501.204(1). Consistent with that conclusion, this Court and several other Florida courts have held that similar payment request letters do not constitute "trade or commerce" and that similar alleged conduct in collection activities cannot support a FDUTPA claim. *See Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012) (granting motion to dismiss FDUTPA claim because actions taken to collect a debt are do not constitute "trade or commerce" and are not actionable under FDUTPA) (Williams, D.J.); *Mesa v. Bos. Portfolio Advisors, Inc.*, No. 15-21087-Civ-COOKE, 2015 U.S. Dist. LEXIS 92549, at *10 (S.D. Fla. Jul. 16, 2015) (granting motion to dismiss FDUTPA claim against university and entity to which it assigned student's debt because "debt collection activities are not 'trade or commerce' for FDUTPA purposes."); *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F.

Supp. 2d 1356, 1375 (S.D. Fla. 2010) (holding that law firm's issuance of pre-suit claim letters did not constitute "trade or commerce" and noting that law firm's "acts—conduct ostensibly occurring during the exercise of a legal remedy—had zero connection whatsoever to any 'trade or commerce'"). *Trent v. Mtg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356 (M.D. Fla. 2007) (holding that mortgage lender's successor was not engaged in trade or commerce for purposes of FDUTPA when it sent pre-suit claim letters and foreclosed on mortgages), *aff'd*, 288 F. App'x 571 (11th Cir. 2008); *DBI Servs. LLC v. Shorter*, No. 4:16-cv-127MW/CAS, 2017 U.S. Dist. LEXIS 204340, at *5 (N.D. Fla. May 1, 2017) ("Simply attempting to collect a debt by exercising one's legal remedies does not amount to 'advertising, soliciting, providing, offering, or distributing' as defined by the FDUTPA."). Because Sixt was not involved in "trade or commerce" and could not have violated FDUTPA when it sent Calderon communications requesting that he pay repair charges, Calderon's claims under Counts I and V should be dismissed.

**D.      Calderon's Claims Against Sixt Franchise Should Be Dismissed Because He Fails To Allege Any Facts That Might Support A Claim Against Sixt Franchise.**

For the reasons discussed above, Calderon's claims against both Defendants fail as a matter of law. Moreover, Calderon totally fails to allege any facts supporting his claims against Sixt Franchise. Calderon does not allege that he contracted with, paid money to, or otherwise interacted with Sixt Franchise whatsoever in connection with his rental. The Complaint collectively refers to the Defendants, which are separate legal entities, as "Sixt." Compl. ¶ 1. The Complaint vaguely identifies Sixt Rent A Car as the "primary entity responsible for vehicle rental operations," and Sixt Franchise as the "primary entity responsible for Sixt's US franchising operations." *Id.* at ¶¶ 10, 11. The Complaint then fails to identify which entity or entities were involved in the alleged conduct that forms the basis of Calderon's claims. But a review of the documents incorporated into the Complaint demonstrates that Calderon has no claim against Sixt Franchise.

As shown in the Face Page and Rental Jacket, Calderon rented a car from Sixt Rent A Car. *See* Face Page at 1; Rental Jacket ¶ 1. Sixt Franchise was not a party to the Rental Agreement. Calderon does not allege that he had any other agreement with Sixt Franchise, and does not allege any basis upon which that affiliate could be held liable under the contract. *Cf. Meterlogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1358 (S.D. Fla. 2000) ("the sharing of a business address and the overlap of officers is insufficient to support a finding that the subsidiaries are the alter ego of their corporate parents."). Therefore, Calderon's breach of contract claim in Count II against Sixt Franchise should be dismissed. *Brush*, 238 F. Supp. 3d at 1366-67.

Likewise, Calderon does not allege any deceptive or unfair practices that might support a FDUTPA claim against Sixt Franchise. To the contrary, his contract shows that he rented the car from Sixt Rent A Car, and that the correspondence at issue was sent by Sixt Rent A Car. *See* Rental Jacket ¶ 1; Face Page at 1; Mot. Ex. 2. In addition, Calderon fails to allege any basis for imposing liability upon Sixt Franchise for the alleged conduct of its affiliate. *Cf. Meterlogic*, 126 F. Supp. 2d at 1358. Accordingly, Calderon's FDUTPA claims in Counts I and V against Sixt Franchise should be dismissed. *Guerrero*, 889 F. Supp. 2d at 1355.[7]

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and dismiss all of Calderon's claims with prejudice.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request that the Court hear one (1) hour of oral argument on the foregoing Motion to Dismiss.

---

[7] At a minimum, the claims against Sixt Franchise should be dismissed because they do not satisfy the standards of Rule 8(a).

Respectfully submitted this 14th day of November, 2019.

> /s/ *Irene Oria*
> Irene Oria, Esq.
> FL Bar No. 484570
> FisherBroyles, LLP
> 199 E. Flagler St. #550
> Miami, FL 33131
> Tel.: (786) 536-2838
> irene.oria@fisherbroyles.com
>
> Patrick M. Emery, Esq. (admitted *pro hac vice*)
> FisherBroyles, LLP
> 945 East Paces Ferry Rd NE
> Suite 2000
> Atlanta, GA 30326
> (404) 793-0652
> patrick.emery@fisherbroyles.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the counsel of record identified on the Service List below.

/s/ Irene Oria
Irene Oria, Esq.

## SERVICE LIST

Brian W. Warwick
Janet R. Varnell
 & Warwick, P.A.
P.O. Box 1870
Lady Lake, FL 32158
T: (352) 753-8600
F: (352) 504-3301
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com
kstroly@varnellandwarwick.com

Steven G. Calamusa
Gordon & Doner, P.A.
4114 Northlake Boulevard
Palm Beach Gardens, FL 33410
T: (561) 799-5070
F: (561) 799-4050

*Attorneys for Plaintiffs*