## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No. 19-62408-CIV-WILLIAMS

**PHILIPPE CALDERON and
ANCIZAR MARI**N, on behalf of
themselves and all others similarly
situated,

           Plaintiffs,

v.

**SIXT RENT A CAR, LLC, AND SIXT
FRANCHISE USA, LLC,**
           Defendants.

_____/


### Plaintiff Calderon's Opposition to Defendants' Motion To Dismiss Plaintiff's Claims

### I.     INTRODUCTION

Most consumer contracts set forth all terms and conditions in a single document that can be reviewed prior to the consumer agreeing to be bound. Sixt Rent a Car, LLC ("Sixt") and Sixt Franchise USA, LLC[1] could have drafted such an agreement here and disclosed all terms and conditions in a single agreement presented to consumers prior to being signed[2]. Instead, Sixt chose to break up its "Rental Agreement" into two separate contracts: (1) a Face Page Contract (provided and signed electronically) containing the basic rental terms, and (2) a Rental Jacket

---

[1] After a review of documents attached to Defendants' Motion and further research, Plaintiff will dismiss Sixt Franchise USA, LLC without prejudice. If further discovery evidences they are the proper party to this action, Plaintiff reserves the right to re-add them as a defendant.
[2] Sometime around 2018, Sixt actually began to make this their business practice, likely due to European Union consumer regulatory authority pressure.

which included additional terms, fees and costs.  Why break it up?  Why not simply include all terms in a single document?

A review of the facts as presented by Sixt on pages 3 and 4 of its Motion to Dismiss is telling. Doc. 11 (Def. Mtn.), at 3-4. Although it cities to language within the initial Face Page contract and explains that "Calderon had an opportunity to review the terms of the *Face Page* before he signed it," Sixt never states when or where Plaintiff Calderon had an opportunity to review the terms of the Rental Jacket *before* he was bound by its terms. *Id*. at 4. That is because Sixt attempted to hide the majority of its onerous terms in the Rental Jacket, which was only provided to Plaintiff *after* he was bound and "along with the keys to the vehicle." Def. Mtn., p.4.

Unfortunately for Sixt, this deceptive methodology fails because the parties lacked mutual assent for the rental jacket terms and Florida's incorporation by reference law prohibits such hide-the-ball tactics.  As a result, the motion to dismiss is due to be denied.

## II.     FACTS

Plaintiff rented a car from Sixt in Florida for three days between April 1 and 4, 2016. Complaint [Dkt. 1] (Compl.) ¶¶ 53, 54, 63. When Plaintiff arrived at the Sixt kiosk, Plaintiff was asked to sign an electronic version of the "Face Page of Contract No. 9336235480." Compl. ¶54, Ex. C. The Face Page contract states that its agreement with Plaintiff actually consists of two separate contracts: (1) a Face Page Contract's terms (provided and signed electronically) containing the basic rental terms, and (2) a "rental jacket" which included additional terms:

> ".… By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement."

*See id.* at ¶57. Per Sixt's Company wide-policy, at no point prior to signing the electronic signature for the Face Page contract was Plaintiff presented with, provided the opportunity to review, or given instructions on how to access the "rental jacket" referenced in the Face Page contract. *See id.* at ¶55. Only after Plaintiff signed the electronic signature device, the Face Page contract receipt was printed, folded, and placed within a folder paper envelope along with the keys to the vehicle. *Id.* at ¶56. The folded paper envelope was actually the "Terms and Conditions Rental Jacket," which contains additional terms and conditions that were unknown to Plaintiff, which Sixt purports to be the "rental jacket" referenced in the Face Page contract. *See Id.* at ¶29-31, Ex. A.

On or around January 30, 2017, nearly nine months after his rental, Plaintiff Calderon received an invoice from Sixt seeking $1,131.65 for damage allegedly caused to the vehicle during his April 2016 rental. Compl. at ¶68. The costs are listed as follows: Repair costs ($667.24), Administrative Fee ($170), Diminished Value ($166.81), Loss of Use ($102.60), and Estimate/Appraisal Fee ($25). *Id.* Sixt charged Plaintiff for Repair costs, administrative fees, and estimate/appraisal fees for the services of third-parties, but Sixt never paid these pass-through charges to the third parties. *See id.* at ¶70-74. Additionally, none of the invoiced charges to Plaintiff were authorized in Face Page contract. *See Id.* at Ex. C. However, these fees are listed in the "Terms and Conditions Rental Jacket," *Id.* at ¶69, Ex. A. Plaintiff was not provided a copy of the Terms and Conditions Rental Jacket until after he signed the Face Page contract and after he was allegedly bound by its terms. *Id.* at ¶58.

## III.   Argument

### A.  Standard of Review

On a Rule 12(b)(6) motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations as true, and view all

inferences from those facts in the light most favorable to the plaintiff. *See Jackson v. Okaloosa County,* 21 F.3d 1532, 1534 (11th Cir. 1994); *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir. 1994); *Fortner v. Thomas,* 983 F.2d 1024, 1027 (11th Cir. 1993); *Sunstar Sec. Healthcare Litig.,* 173 F. Supp. 2d 1315, 1317 (M.D. Fla. 2001). A complaint should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The threshold that a complaint must meet in order to survive a motion to dismiss is exceedingly low. *Campos v. L.N.S.,* 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998).

### B. Plaintiff Calderon Adequately Pled his Breach of Contract Claim (Count II)

A breach of contract claim in Florida federal court need only comply with Fed. R. Civ. P. 8. *Manicini Enters., Inc. v. Am. Exp. Co.*, 236 F.R.D. 695, 698 (S.D. Fla. 2006). To do so, the plaintiff must only allege: "(1) a valid contract, (2) a material breach, and (3) damages*." Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011). "[A]ny remaining inquiries which [d]efendants may have concerning the specific terms of the alleged contracts may be resolved through the discovery process." *Manicini*, 236 F.R.D. at 698.

Plaintiff Calderon's complaint plainly asserts that the only binding agreement between him and Sixt is the Face Page contract that he signed electronically at the time he rented his vehicle. Compl. at ¶62. That Face Page contract addressed the cost of the three-day rental and other basic terms. *Id.* at Ex. C. However, the Face Page contract does not authorize Sixt to charge Plaintiff the repair fees, administrative fees, appraisal/engineering fees, and other charges which are the subject of this litigation. *See id.* Plaintiff asserts that charging fees which are not included within the applicable contract (Face Page contract) constitutes a breach. *Id.* at ¶¶ 69, 134-140. Plaintiff also asserts that he has suffered damages from this breach in the amount of $1,131.65

which is the total amount of Sixt's repair charges, $500 of which has already been paid. *See id.* at ¶68. Taking these allegations as true, Plaintiff has sufficiently pled the elements of a breach of contract claim under the federal rules.

Sixt argues that Plaintiff's breach of contract claim should be dismissed because it has not breached its Face Page contract by charging the repair fees because it contends that its Face Page contract incorporated by reference the terms and conditions of its rental jacket, which included the fees at issue.  The motion is due to be denied because there are genuine issues of material fact surrounding (1) whether there was mutual assent to the terms in the rental jacket; and (2) whether the rental jacket was properly incorporated by reference.

## C.  Lack of Mutual Assent

An enforceable contract requires mutual assent as to sufficiently definite essential terms. *See Holloway v. Gutman,* 707 So.2d 356, 357 (Fla.Dist.Ct.App.1998) ("Whether a contract is oral or written, it is essential that the parties mutually agree upon the material terms.").   With no assent, there is no actionable offer; with no offer, there is no enforceable contract.  *See Gibson,* 539 So.2d at 460 ("Absent mutual assent, neither the contract nor any of its provisions come into existence.").  "[A] meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds."  *de Vaux v. Westwood Baptist Church*, 953 So.2d 677, 681 (Fla.App. 1 Dist.,2007)

Plaintiff was not provided a copy of the Terms and Conditions Rental Jacket until after he signed the Face Page contract. Compl. at ¶60. Defendant admits as much in its statement of facts by explaining that Calderon only had an opportunity to review the Face Page contract before it

was executed. Def. Mtn. p.4. Defendant also admits that the rental jacket was given to Plaintiff along with keys to the rental car. *Id.* ("After Calderon signed the Face Page, a copy of the Face Page was printed, folded, and placed into a rental jacket.  Calderon was handed those contract documents along with the keys to the vehicle.").  This admission by Sixt is critical because if the Terms and Conditions Rental Jacket was not provided or even made available to Plaintiff at the time of execution, then there could be no mutual assent or meeting of the minds regarding all the terms set forth in the rental jacket.

In *Bacon v. Avis Budget Group, Inc.*, 357 F.Supp.3d 401, 416–17 (D.N.J., 2018), under remarkably similar facts, a New Jersey District Court determined on cross motions for summary judgment that the terms and conditions set forth in rental jackets used by Avis and Budget lacked mutual assent.  In that case, Defendants were trying to enforce an arbitration clause that was contained its rental jacket which, as here, was not signed by the consumer and was only provided after the agreement was executed.  *Id.* at 407-408.  The Court refused to enforce the arbitration clause set forth in the rental jacket and explained his rationale was follows:

> As to the issue of mutual assent for the U.S. Plaintiffs, I essentially hold as follows: The Rental Jackets are separate from the U.S. Agreements that the customers signed. The relevant arbitration language appears only in the Rental Jackets, not in the Agreements. There can be no mutual assent with respect to terms in a document that the parties do not understand to be part of the contract. Therefore, a fundamental question is the extent to which the Rental Jackets were available for the customers' inspection when they signed the U.S. Agreements. Since the Rental Jackets were not adequately presented to the plaintiffs until after they signed the U.S. Agreements, and because the Agreements did not describe the Rental Jackets in a way that would be clear to the reader, I hold that the U.S. Agreements did not adequately incorporate the Rental Jackets under New Jersey or Florida law.

*Id.,* 357 F.Supp.3d at 416–17.

Because Plaintiff Calderon has asserted and Sixt has admitted that he was not provided a copy of the rental jacket until after the agreement was executed, a genuine issue of material fact exists as to whether there was mutual assent to the terms set forth in the rental jacket. Compl. at ¶60, Def. Mtn. at 4.  At the motion to dismiss stage, this is a sufficient basis for denying the motion to dismiss.

### D.  No Incorporation by Reference

"Under Florida law, [a] document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." *Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc*., 743 So. 2d 627, 631 (Fla. 1st DCA 1999). Both elements must be present. *See Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So. 3d 163, 168 (Fla. 4th DCA 2014) (finding that an arbitration agreement had not been incorporated by reference where only one element was met).

To meet these two requirements, Sixt points to two sentences in its Face Page contract as its basis for incorporating the majority of terms and conditions set forth in the "rental jacket" which is not provided to the consumer until *after* they agree to be bound:

> By signing below, you agree to the Terms and Conditions printed in the rental jacket and to the terms found on this Face Page, which together constitute this Agreement.  You acknowledge that you have been given an opportunity to read this Agreement before being asked to sign it, and that all information you have provided is true and correct.

(Def. Mtn. Ex. 1).

There are multiple reasons why this confusing language does not show Plaintiff intended to be bound to the Terms and Conditions Rental Jacket.  First, the Terms and Conditions Rental Jacket was not provided to Plaintiff until after he agreed to the Face Page agreement.  Thus, Sixt

was asking him to agree to terms and conditions he had no access to unless he agreed to them. This does not comport with knowing consent to be bound.

Second, the term "rental jacket" is not defined in the Face Page contract and is not a common term that consumers would understand to mean a separate contact written on the inside of an envelope to be delivered with the keys to the rental car.  In fact, Merriam-Webster defines "jacket" as "an outer covering or casing: such as wrapper or open envelope for a document" or "an envelope for enclosing registered mail during delivery from one post office to another." www.merriam-webster/.com/dictionary/jacket.  Thus, this phrase references something that holds other documents or items and there is no evidence that Plaintiff or other consumer would expect contract terms to be delivered in such a manner.

Third, Sixt further confuses the consumer by referencing two separate contracts - the Face Page contract and a "rental jacket" together as "this Agreement." Def. Mtn. Ex. 1. Obviously, the normal use of the phrase "this Agreement" is used to reference the agreement currently under review.   Again, Merriam-Webster is helpful as it defines the "this" as "the person, thing, or idea that is present or near in place, time or thought or that has just been mentioned." www.merriam-webster/dictionary/this.  Thus, the word "this" is descriptive of the agreement currently being signed by the consumer, which would be only the Face Page.

Abbott & Costello would be proud of the "who's on first" nature of the phrasing selected by Sixt.  When Sixt says "this Agreement," the consumer is supposed to understand that they actually mean "that agreement" (Terms and Conditions Rental Jacket).  It is likewise confusion to use the "this Agreement" to mean both the Face Page and the "rental jacket" which are, in fact, two separate documents. Another phrase should have been used if Sixt wanted to clarify that it was referencing more than just the Face Page.  For example, if Sixt had clarified that both the Face

Page and the "rental jacket" together constitute the "Rental Agreement," then the consumer would better understand that a separate agreement was involved.  However, by choosing to reference both agreements as "this Agreement," Sixt intentionally confused Plaintiff and members of the class to such an extent that a clear intent to be bound by the collateral "rental jacket" simply cannot be found.

Fourth, and to add to the consumer's confusion, Sixt states in the Face Page that "you have been given the opportunity to read *this Agreement* before being asked to sign it…"  At the time Plaintiff was provided the Face Page agreement via an electronic pad, he had NOT yet been provided any "rental jacket" or any of the terms contained therein.  Thus, by having the consumer agree that "this Agreement" was given to them, when the rental jacket clearly had not been provided at that time, Sixt further confuses the issue. This wordplay is intended to confuse the consumer and make them agree to receiving and reviewing documents that had not been provided to them.  Such misleading terms fail to meet the requirements for incorporation by reference because Sixt cannot show a clear intent by Plaintiff to be bound by the "incorporated" rental jacket terms that he had no access to until after he signed the Face Page.

In *Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So. 3d 163, 168 (Fla. 4th DCA 2014), the Court of Appeals determined that that an arbitration agreement had not been properly incorporated by reference where Plaintiff was not provided access to the document being incorporated.  Although the employment agreement referenced a separate agreement identified as a "FTP" the employee was not provided a copy of the FTP or how to review it prior to being bound by it. *Id.* at 167-68.  Ultimately, the Court held that "[a]lthough the employment agreement clearly stated that any and all disputes were 'subject to' the FTP, the FTP was not sufficiently described in the employment agreement or attached and no location was given as to where the FTP could be

found. Therefore, the FTP was not sufficiently incorporated into the employment agreement." *Id.* at 168 (emphasis added).

Similarly, in *BGT Group, Inc. v. Tradewinds Engine Services, LLC,* 62 So.3d 1192, 1194 (Fla. 4th DCA 2011), BGT sent Tradewinds a quote for the sale of turbine parts which included that the order was subject to "the attached BGT terms and conditions." *Id.* However, there were no terms and conditions attached. *Id.* BGT then sent an invoice to Tradewinds, which referenced a "remarks" section. *Id.* at 1194. The "remarks" section also referenced the "attached BGT terms and conditions," which again were not attached. *Id.* The Florida Fourth District Court of Appeal held that that BGT's failure to provide the terms and conditions during the negotiating process nullified its attempt to incorporate those terms. The Court further held that BGT "as drafter of the documents, did not intend to incorporate any 'terms and conditions' where it did not provide a specific description of them *or* attach them to the quote and purchase order." *Id.* (emphasis added). As a result, the Court also concluded "it cannot objectively be said the Tradewinds agreed to be bound by them." *Id.*

The *Avis* case is also instructive here because the Court interpreted Florida law and analyzed both *Spicer* and *BGT*. 357 F.Supp.3d 401. As here, the plaintiffs in *Avis* initially signed a one-page agreement which the Court found was "essentially a receipt." *Id.* at 407. Like Sixt, the final paragraph of Avis's equivalent Face Page contract stated, in part: "I agree the charges listed above are estimates and that I have reviewed & agreed to all notices & terms here and in the rental jacket." *Id.* at 407-08. The initial contract likewise failed to specifically define what a "rental jacket" is, and the phrase was not capitalized or otherwise emphasized. The Court found that Payless rental sales associates were instructed to give a what they purported to be the "rental jacket" to the customer after the customer signs the rental agreement contract. *Id.* at 408.

Geary and Wheeler did not receive their Rental Jackets before signing their copies of the U.S. Agreements. The Agreements did not provide any information about where the Rental Jackets were located or how the customer could get access to them. The Rental Jackets were not otherwise meaningfully available for inspection; they were located on the desk underneath the rental counter, partially out of view; the text was upside-down from the customer's perspective; and the Rental Jackets did not actually bear the title "Rental Jacket."

The U.S. Agreement, here as before, makes no more than a bare reference to the existence of the Rental Jacket: "I have reviewed & agreed to all notices & terms here and in the rental jacket." That is insufficient under the Florida law of incorporation by reference, which "requires more than simply making reference to another document in a contract." *Jenkins v. Eckerd Corp.*, 913 So.2d 43, 51 (Fla. Dist. Ct. App. 2005). Such a document is effectively incorporated only "if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." *Id.* (quoting *Management Computer Controls, Inc. v. Charles Perry Construction, Inc.*, 743 So.2d 627, 631 (Fla. 1st DCA 1999) ("The contract must contain more than a mere reference to the collateral document") ). This unadorned reference to a "rental jacket" does not satisfy that standard. *See id.*; *Vitacost.com, Inc. v. McCants*, 210 So.3d 761, 765 (Fla. Dist. Ct. App. 2017) ("Florida law requires the agreement to specifically provide that the collateral document is being incorporated and to sufficiently describe the collateral document to be incorporated."); *see also Apopka Clear Lake Investments, LLC v. Sema Constr., Inc.*, No. 14-cv-881, 2015 WL 12830494, at *8 (M.D. Fla. Oct. 14, 2015).

Therefore, under Florida law, plaintiffs Geary and Wheeler will not be deemed to have assented to the arbitration provisions found in the Rental Jackets, which were not properly incorporated by reference into the Rental Agreements. As to Geary and Wheeler, the motion to compel arbitration is denied.

*Id.* at 425–26.

As discussed above, the term "rental jacket" was not capitalized or defined in the Face Page contract.  To make matters worse, Sixt defined the two contracts together as "this Agreement" which was even more confusing than the language found to be inadequate in *Avis*. *See id.*  At this stage of the litigation, and viewing the evidence in the light most favorable to Plaintiff Calderon,

this Court cannot say that the terms and conditions set forth in the rental jacket were incorporated by reference as a matter of law or that there was mutual assent to terms never provided. Accordingly, genuine issues of material fact exist as they did in the *Avis* case and this Court should deny Sixt's motion to dismiss Plaintiff's breach of contract claim on this basis.

To avoid the issue of whether Sixt sufficiently described or referred to what "rental jacket" means in the Face Page contract, Sixt argues that it does not matter whether Calderon physically received a copy of the rental jacket. Sixt hangs it hat on *Luna v. Alamo Rent-A-Car, LLC*, No. 06-60453-CIV, 2006 WL 8432203, at *1 (S.D. Fla. July 21, 2006), for its argument that a party does not have to receive the incorporated document prior to execution. Def. Mtn. at 12. However, *Luna* is distinguishable based upon the arguments addressed to the Court. While it is true that the Plaintiff in *Luna* argued that he did not receive the rental jacket, there was no analysis by the Court regarding whether there was mutual assent or whether the terms of the rental jacket were properly incorporated by reference. *Id*. at *2-3. The decision lacks any such analysis. *Id.* In fact, *Luna* turned on a Rule 12(b)(3) motion to dismiss for improper venue. *Id.* This case does not provide any useful guidance like the cases Plaintiff cites.

Sixt also makes much ado of a prior decision by this Court in *Guaniro Zamora v. Ace Am. Ins. Co.*, Case No. 17-23201-CIV-WILLIAMS, (S.D. Fla. Aug 27, 2019) (Williams, D.J.). While Plaintiff Zamora was seeking damages stemming from injuries sustained in a rental car, the issues before the Court did not involve contract formation challenges and disputes like the ones involved here. Sixt wants this Court to get caught up in one sentence of dicta: "additionally, when plaintiff rented the vehicle, plaintiff agreed to be bound by the 'Rental Agreement Jacket' which limited UM coverage to $100,000 per accident. . ." *Id.* ECF# 60, at 3. This statement was hardly an analysis of whether the collateral document was sufficiently described in the initial contract, nor does it

indicate whether the rental jacket was provided to the plaintiff prior to signing the rental contract. In any event, this case has no relevance to the instant action. *See id.*

### E. Sixt Possessed No Common Law Right to the Fees at Issue

Sixt is so confident that Plaintiff must pay its repair costs, that it argues that it possesses a common law right to ask Plaintiff to pay for the Administrative Fees, Loss of Use, Repair Costs, and Estimate/ Appraisal Fees contained within its January 30, 2017 invoice to Plaintiff. Sixt cites zero cases that support this novel assertion. Def. Mtn. at 15. Because Plaintiff possessed no obligation to pay those charges and fees under the Face Page contract, Sixt breached the Face Page contract by charging Plaintiff $1,131.65 in repair fees and costs. *See* Compl. ¶68. Therefore, Sixt's contention that Plaintiff has failed to identify any term of the Face Page contract that was breached is wholly without merit. Plaintiff has adequately alleged that (a) Plaintiff was not subject to the Terms and Conditions Rental Jacket (Compl. ¶136), (b) the Face Page contract governs the only fees and charges that Sixt can charge Plaintiff (Compl. ¶ 138), and (c) "Sixt breached the Face Page contract because Plaintiff Calderon and Class members were charged amounts that were not included in the Face Page contract." *Id.* at 139. Therefore, under Fed. R. Civ. P 8, Plaintiff has adequately pleaded that Sixt's repair charges were not authorized in the Face Page contract, resulting in a breach of contract.

### F. `Plaintiff Calderon Adequately Alleged Breach of Contract Damages

Sixt also argues that Plaintiff Calderon failed to properly alleged damages for his breach of contract claim. Paragraph 140 of the Complaint and Sixt's brief confirms that Sixt is seeking a total of $1,131.65 in repair costs under the rental jacket. Page 6 of its brief details the amounts Sixt asserts Plaintiff must pay under his contract and Sixt and even attaches its "Claim Letter," estimate and invoice to its motion as Exhibit 2. Thus, Sixt confirms that if Plaintiff does not prevail on his

13

claims advanced in this action, he will have to pay the repair costs as invoiced. *Id.* These disputed amounts, although not technically fully paid, constitute actual damages.[3]

More importantly, Sixt's motion attached exhibits show that Plaintiff paid $500 of the $1,131.65 total amount allegedly due as a result of the "Partial Damage Waiver" that he paid $9.99 per rental day for under the Face Page contract. Def. Mtn. Ex. 2. In other words, Plaintiff made arrangements to cover the first $500 of these bogus repair fees by purchasing an insurance type product from Defendant – Partial Damage Waiver. This amount constitutes a payment by Plaintiff Calderon as it has been used by Sixt to reduce the total amount due. This amount also constitutes actual damages.[4]

Just because Plaintiff Calderon did not fully pay Sixt's improper invoice containing unauthorized repair fees, does not mean there was no harm. There is an inherently speculative nature of what Sixt could do with Plaintiff Calderon's refusal to pay, such as report to credit bureau or send to collections, both of which could harm his credit score, in addition to time and monies Plaintiff has dedicated to investigating Sixt's improper January 2019 invoice. When such variables and contingencies exist as a result of a breach of contract, which makes it difficult to ascertain concrete harm, nominal damages are appropriate. Nominal damages may be awarded when the breach of an agreement or invasion of a right is established, since the law infers some damage to the injured party; where there is insufficient evidence presented to ascertain the particular amount of loss, the award of nominal damages is proper. *Price v. Southern Home Ins. Co. of*

---

[3] If this Court deems it necessary, Plaintiff can pay the amounts allegedly due into the Court registry to show further actual damages rather than have his claims dismissed. Plaintiff would ask this Court for leave to make such payment and amend his complaint accordingly, as opposed to dismissing his entire case with prejudice.
[4] Plaintiff realizes that this argument is not specifically set forth in the Complaint. However, it is clarified in the documents Defendant has placed into the record. Should the Court deem it necessary, Plaintiff would request the opportunity to replead facts surrounding his purchase of the Partial Damage Waiver rather than dismiss his claim with prejudice.

*Carolinas*, 100 Fla. 338, 129 So. 748 (1930). *See* 9A Fla.Jur., Damages ss 7-8. The determination of a breach and any amount of damages is for the trier of fact to determine, but Plaintiff has adequately alleged a breach of contract and the resulting harm Plaintiff has suffered under Fed. R. Civ. P. 8 and as a result the motion to dismiss must be denied.

## Plaintiff Adequately Pleaded his FDUTPA Claims

Here, Plaintiff asserts two separate FDUTPA claims in this action and will address each in turn.

### A.  Count I – FDUTPA Claim for Charging Fees not Contractually Owed.

In Count I, Plaintiff asserts that it is an unfair and deceptive practice for Sixt to charge Plaintiff and class members repair fees that were not part of the contract between the parties. Compl. at ¶¶119-133 As discussed in great detail above, Sixt did not properly incorporate the "Terms and Conditions Rental Jacket" into its Face Page contract. Thus, the January 30, 2017 invoice which purports to charge Plaintiff:  $667.24 in repair costs, $170 Administrative Fee, $166.81 Diminished Value, $102.60 Loss of Use, and $25 Estimate/Appraisal Fee are fees that were not agreed to by Plaintiff and the class. *See id.*

Plaintiff asserts that it was an unfair and deceptive practice for Sixt to incorporate such fees into its rental jacket which was not provided to the consumer until after they signed the Face Page contract. Compl. at ¶ 123.  Plaintiff also asserts in County I that it was unfair and deceptive to assert that Plaintiff deceived into believing that they Rental Jacket's fees were applicable to them, when they are not. Compl. at ¶ 130.  In other words, it is an unfair and deceptive practice for Sixt to charge Plaintiff and class members repair fees that are not authorized by its contract. *See supra.*

The Florida Supreme Court has defined an "unfair practice" as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to *consumers*." *PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So.2d 773, 777 (Fla.2003)* (emphasis added) (citations omitted) (internal quotation marks omitted). Additionally, it has defined "deception" as "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* "Whether [specific] conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine." *Nature's Prod., Inc. v. Natrol, Inc.*, 990 F.Supp.2d 1307, 1322 (S.D. Fla. 2013).

Taking Plaintiff's allegations in Count I as true, and assuming that the rental jacket was not properly incorporated into the Face Page contract, it would be "unfair" under the above definition for Defendant to charge and collect fees not contractually owed. Furthermore, it would be "deceptive" for Sixt to send invoices asserting that repair fees and due and owing under the rental agreement if that statement is not true. Accordingly, Plaintiff has properly asserted a valid FDUTPA claim under Count I.

**B.  Count V – FDUTPA Claim for False Pass-Through Charges**

In Count V, Plaintiff Calderon asserts his second FDUTPA claim under Count V that the repair charges imposed by Sixt are unfair and deceptive because they appear to be pass-through amounts that were paid to third parties, when in fact Sixt retains large portions or all of said amounts for itself as undisclosed profit. Compl. at ¶ 162-164.

Courts have held that misrepresentations regarding similar charges support FDUTPA claims. *See, e.g., James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications,*

*Inc.*, 796 F.Supp.2d 1341, 1353 (M.D. Fla. 2011) (inclusion of unrecoverable charges for "claims processing" in costs of damage to underground facilities billed to excavators); *Turner Greenberg Assocs., Inc. v. Pathman*, 885 So.2d 1004, 1008 (Fla. 4th DCA 2004) (furniture store's collection of a freight/insurance charge in connection with financed furniture sales was a deceptive and unfair trade practice; fee was in reality a customer surcharge); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699, 703 (Fla. 3d DCA 2000) (charges invoiced as "port charges" but kept as undisclosed profit held to violate FDUTPA).

In *Deere Construction, LLC v. Cemex Construction Materials Fla., LLC*, 198 F.Supp.3d 1332 (S.D.Fla., 2016), the District Court recently denied a motion to dismiss similar claims surrounding a "fuel surcharge" and an "environmental charge" that were simply undisclosed profit centers for defendant.  The Court described the claims as follows:

> With regard to the claimed deceptive act or unfair practice, the Amended Complaint makes abundantly clear Plaintiff's claim is not that it did not know about the "fuel surcharge" and "environmental charge." Those fees are undoubtedly disclosed in the agreement and Defendants' invoices. What is allegedly deceptive is that the so-called "fuel surcharges" and "environmental charges," labeled as such by Defendants, were not in fact designed to cover anything related to fuel or the environment. Defendants chose the two adjectives that describe the fees being assessed. Each adjective carries meaning. But the messages, according to Plaintiff, are deceptive. Plaintiff's contention is it did not know the fees were illegitimate mechanisms designed merely to contribute to Defendants' profits rather than address any costs Defendants were incurring with regard to activities falling under the descriptive terms "fuel" or "environmental."

*Id.* at 1338.

Likewise, Plaintiff's FDUTPA claim also asserts that the repair charges imposed by Sixt appear to be paid to third parties when they are not, and they include undisclosed profits. As a result, the claims are properly alleged and cannot be dismissed.

i.   **Plaintiff Calderon Need Not Allege Actual Damages**

Sixt argues that Plaintiff's FDUTPA claims should be completely dismissed because he did not allege actual damages. Def. Mtn. at 16-17. This argument fails because Plaintiff alleged, he was aggrieved by the unfair and deceptive conduct, which is all that is required to assert FDUTPA injunctive and declaratory relief claims. Specifically, Plaintiff Calderon asserts under FDUTPA Count I that "his credit scores are potentially at risk of lowering due to the unauthorized fees being charged to him and injunctive relief is appropriate to prevent Sixt from further billing and collection efforts." Compl. ¶133. Under FDUTPA Count V, Plaintiff asserted that "those Plaintiffs and Class Members that have yet to pay the mounts invoiced by Sixt for the marked-up fees and costs, are "aggrieved parties" within the definition of Fla. Stat. § 501.211(1), and are therefore entitled to injunctive relief to stop Sixt's unfair and deceptive practices." Compl. at ¶ 168.

Section 501.211(1), Florida Statutes, permits a claim for injunctive relief by "anyone aggrieved" by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur in the future. *See, e.g., Haun v. Don Mealy Imports, Inc.,* 285 F.Supp.2d 1297 (M.D.Fla.2003); *Klinger v. Weekly World News, Inc.,* 747 F.Supp. 1477, 1480 (S.D.Fla.1990); *Macias,* 694 So.2d at 90. Specifically, Section 501.211(1) states:

> (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

501.211. Other individual remedies, FL ST § 501.211.

In *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.,* 123 So.3d 1149 (Fla. 5th DCA 2012), the Fifth District Court of Appeal was faced with the question of whether an aggrieved

party had to suffer monetary damages to be able to maintain an action for an injunction under section 501.211(1). It was alleged that Timeshares Direct used stolen information from Wyndham to solicit owners of Wyndham timeshares to use Timeshares Direct's services. *Id.* at 1150. Similar to the instant case, the trial court ruled in *Wyndham* that because Wyndham could not prove actual damages on its FDUTPA claims, injunctive relief under FDUTPA was precluded as a matter of law. *Id.* at 1151. In reversing the trial court, the Court of Appeals reviewed the purpose of FDUTPA and held that "regardless of whether an aggrieved party can recover 'actual damages' under section 501.211(2), it may obtain injunctive relief under section 501.211(1)." *Id.* at 1152 (internal citations omitted).

Because Plaintiff Calderon seeks declaratory and injunctive relief pursuant to Florida Statute § 501.211(1), his FDUTPA claims cannot be dismissed for not asserting actual damages.[5]

## ii.    "Trade" or "Commerce" Is Present Under FDUTPA

Sixt also seeks to avoid FDUTPA liability by attempting to separate its repair fees from Plaintiff's vehicle rental by characterizing the invoices as "debt," instead of additional fees due in connection with its business of renting vehicles. Def. Mtn. at 18.  FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).  To make a FDUPTA claim, Plaintiff must merely allege that he was a person aggrieved by unfair practices arising out of a "trade or commerce" relationship with the defendant. *See  Kia Motors Am. Corp. v. Butler,* 985 So.2d 1133, 1140 (Fla. 3d DCA 2008).

---

[5] Plaintiff Marin paid the fees and has therefore suffered actual damages and can represent the class on these claims once this Court addressed Sixt's Motion to Compel Arbitration.

In support of this argument, Sixt cites a series of debt collection cases where the conduct at issue was exclusively debt collection and where there was no trade or commerce relationship between the parties. For example, in *Williams v. Nationwide Credit, Inc.*, 890 F.Supp.2d 1319, 1321 (S.D.Fla.,2012), American Express hired Nationwide Credit, a debt collector, to collect a debt owed by the plaintiff's ex-husband. *Id.* at 1320. The Court indeed found that FDUTPA did not apply, but not merely because there were fees being collected, but because the collection efforts did not involve any goods or services. *Id.* at 1322. "No goods or services were offered to her; Nationwide only elicited information from Plaintiff. Nationwide was not engaged or "trade or commerce" as to Plaintiff in making those calls." *Id.* Other courts have similarly found that when there is no underlying good or service, FDUTPA cannot apply. *E.g. State v. Shapiro & Fishman, LLP,* 59 So.3d 353, 355–57 (Fla. 4th DCA 2011); *Law Office of David J. Stern, P.A. v. State,* 83 So.3d 847, 849–50 (Fla. 4th DCA 2011); *Kelly v. Palmer, Reifler & Assocs., P.A.,* 681 F.Supp.2d 1356, 1371–77 (S.D.Fla.2010); *Trent v. Mortgage Electronic Registration Sys., Inc.,* 618 F.Supp.2d 1356, 1365 n. 12 (M.D.Fla.2007).

These cases are inapplicable here for obvious reasons. The repair fees stem from Plaintiff's three-day rental. Thus, there is a "trade or commerce" relationship between Sixt and Plaintiff satisfies FDUTPA's trade or commerce requirement.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff Calderon's Claims pursuant to Fed. R. Civ. P. 12(b)(6). Finally, if this Court is inclined to grant Defendants' Motion in any part, Plaintiff respectfully requests leave to amend the complaint accordingly.

DATED:  DECEMBER 13, 2019

VARNELL & WARWICK, P.A.

By:/s/ BRIAN W. WARWICK
BRIAN W. WARWICK; FBN:  0605573
JANET R. VARNELL; FBN:  0071072
P.O. BOX 1870
LADY LAKE, FL  32158
TELEPHONE: (352) 753-8600
FACSIMILE:  (352) 504-3301
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com
*kstroly@varnellandwarwick.com*

GORDON & PARTNERS, P.A.

/s/ STEVEN G. CALAMUSA
STEVEN G. CALAMUSA, FBN: 992534
4114 NORTHLAKE BOULEVARD
PALM BEACH GARDENS, FL  33410
TELEPHONE:  (561) 799-5070
FACSIMILE:  (561) 799-4050
*scalamusa@fortheinjured.com*
*SGC.pleadings@fortheinured.com*

***Attorneys for Plaintiffs***