# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**PHILIPPE CALDERON, ANCIZAR**  .
**MARIN, AND**  .
**KELLI BOREL RIEDMILLER,**  .
**on behalf of themselves and all**  .    **Case No. 19-62408-CIV-SINGHAL**
**others similarly situated,**  .
                  .
     **Plaintiffs,**  .
                  .
**v.**  .
                  .
**SIXT RENT A CAR, LLC,**  .
                  .
     **Defendant.**  .

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**FISHERBROYLES, LLP**

Irene Oria, Esq.
FL Bar No. 484570
FisherBroyles, LLP
199 E. Flagler St. #550
Miami, FL 33131
Tel.: (786) 536-2838
irene.oria@fisherbroyles.com

Patrick M. Emery, Esq. (admitted *pro hac vice*)
Lavender Hoffman Alderman, LLC
945 East Paces Ferry Rd NE
Suite 2000
Atlanta, GA 30326
(404) 793-0652
patrick.emery@lhalawyers.com

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

    **I.**    **Summary Judgment Should Be Granted Against Plaintiffs' Contract Claims** .... 4

        A. The Terms And Conditions Rental Jacket Was Not Incorporated By Reference
            Into Plaintiffs' Rental Agreements .......................................................................... 5

            1. Calderon Was Not Provided The Terms And Conditions Before He Signed
               The Face Page ................................................................................................. 6

            2. Marin Testified That He Had No Notice Of The Terms And Conditions ....... 7

            3. Borel Was Not Provided The Terms And Conditions Before She Signed
               The Face Page ................................................................................................. 9

        B. Sixt Cannot Have Breached Terms And Conditions Plaintiffs Did Not Accept .. 10

    **II.**   **Summary Judgment Should Be Granted Against Plaintiffs' FDUTPA Claims**   10

        A. Plaintiffs' FDUTPA Claims Fail Because They Did Not Suffer Any Actual
            Damages As A Result Of The Allegedly Deceptive Or Unfair Conduct ............ 12

            1. Calderon Did Not Pay Any Of The Fees At Issue ........................................ 12

            2. Marin Did Not Pay Any Of The Fees At Issue .............................................. 14

            3. Borel Did Not Pay Any Of The Fees At Issue ............................................... 15

        B. Plaintiffs Lack Standing To Bring Damages Claims Under FDUTPA ............... 15

    **III.**  **Summary Judgment Should Be Granted Against Plaintiffs' Requests For
        Injunctive And Declaratory Relief** .......................................................................... 17

        A. Plaintiffs Do Not Have Standing To Obtain A Declaratory Judgment Or
            Injunctive Relief Under FDUTPA ...................................................................... 17

        B. Plaintiffs Do Not Have Standing To Obtain A Declaratory Judgment Or
            Injunctive Relief Under Their Contract Claims .................................................. 20

CONCLUSION ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                    **Pages**

*Am. States Ins. Co. v. Kelley,*

    446 So. 2d 1085 (Fla. Dist. Ct. App. 1984) ..................................................................... 15

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242 (1986) .......................................................................................................... 3

*Beal v. Paramount Pictures Corp.,*

    20 F.3d 454 (11th Cir. 1994) ........................................................................................... 3

*Bowen v. First Family Fin. Servs.,*

    233 F.3d 1331 (11th Cir. 2000) ............................................................................. 15-16, 20

*Burger King Corp. v. Weaver,*

    169 F.3d 1310 (11th Cir. 1999) ..................................................................................... 10

*Calderon v. Sixt Rent a Car, LLC,*

    No. 19-cv-62408, 2020 U.S. Dist. LEXIS 24247 (S.D. Fla. Feb. 12, 2020) ................ 6, 7

*Caribbean Cruise Line, Inc. v. Better Bus. Bur. of Palm Beach Cty., Inc.,*

    169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ..................................................................... 15

*Cedric Kushner Promotions, Ltd. V. King,*

    533 U.S. 158 (2001) .................................................................................................. 14, 15

*City First Mortg. Corp. v. Barton,*

    988 So. 2d 82 (Fla. 4th DCA 2008) ............................................................................... 11

*City of Los Angeles v. Lyons,*

    461 U.S. 95 (1983) ......................................................................................................... 18

*Cottonwood Ctrs. Inc. v. Klearman*,

    No. CIV 18-252-TUC-CKJ, 2018 U.S. Dist. LEXIS 179047
    (D. Ariz. Oct. 17, 2018) ............................................................................................. 7, 8

*Dapeer v. Neutrogena Corp.,*

    95 F. Supp. 3d 1366 (S.D. Fla. 2015) ......................................................... 17-18

*David v. Richman,*

    568 So. 2d 922 (Fla. 1990) ......................................................................... 5

*Doe v. Univ. of Denver,*

    Case No. 20CA1545, 2022 COA 57, 2022 Colo. App. LEXIS 771
    (Colo. Ct. App. May 26, 2022) .................................................................. 5

*Edwards v. Vemma Nutrition,*

    No. CV-17-02133-PHX-DGC, 2018 U.S. Dist. LEXIS 15371
    (D. Ariz. Jan. 30, 2018) ............................................................................7

*Emory v. Peeler,*

    756 F.2d 1547 (11th Cir. 1985) ................................................................ 18

*Fioretti v. Mass. Gen. Life Ins. Co.,*

    53 F.3d 1228 (11th Cir. 1995) .................................................................. 4, 5

*French v. Centura Health Corp.,*

    2022 CO 20, Case No. 20SC565, 2022 Colo. LEXIS 366
    (Colo. May 16, 2022) ................................................................................ 5, 9, 10

*Greenley v. Avis Budget Grp., Inc.,*

    No. 19-cv-00421-GPC-AHG, 2020 U.S. Dist. LEXIS 54234
    (S.D. Cal. Mar. 26, 2020) ......................................................................... 8

*Griffin v. Dugger,*

    823 F.2d 1476 (11th Cir. 1987) ................................................................ 16

*Harrison v. Culliver,*

    746 F.3d 1288 (11th Cir. 2014) ................................................................ 3

*Haun v. Don Mealey Imps.,*

    285 F. Supp. 2d 1297 (M.D. Fla. 2003) ................................................... 12

*Himes v. Brown & Co. Sec. Corp.,*

    518 So. 2d 937 (Fla. 3d DCA 1987) ................................................................ 12

*In re Brinker Data Incident Litig.,*

    No. 3:18-cv-686-J-32MCR, 2020 U.S. Dist. LEXIS 132399
    (M.D. Fla. July 27, 2020) ................................................................................. 18

*Jones v. TT of Longwood,*

    No. 6:06-cv-651-Orl-19DAB, 2007 U.S. Dist. LEXIS 57365
    (M.D. Fla. 2007) ...................................................................................... 11, 12

*Leonard v. McMorris*,

    63 P.3d 323 (Colo. 2003) ................................................................................. 15

*Lucas v. Hertz,*

    875 F. Supp. 2d 991 (N.D. Cal. 2012) ............................................................. 8

*Malowney v. Fed. Collection Deposit Grp.,*

    193 F.3d 1342 (11th Cir. 1999) ....................................................................... 18

*Mantz v. TRS Recovery Servs.,*

    No. 11-80580-CIV, 2011 U.S. Dist. LEXIS 129332
    (S.D. Fla. Nov. 8, 2011) .................................................................................. 11

*Maor v. Thrifty Auto. Group, Inc.,*

    Case No. 15-222959-CIV-MARTINEZ-GOODMAN, 2018 LEXIS 168664
    (S.D. Fla. Sept. 30, 2018) ......................................................................... 13, 14

*Mendez v. Phillips & Cohen Assocs.,*

    No. 09-21467-CIV-GOLD/MCALILEY, 2009 U.S. Dist. LEXIS 138189
    (S.D. Fla. Oct. 14, 2009) ................................................................................. 19

*Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,*

    896 F.2d 1283 (11th Cir. 1990) ....................................................................... 18

*Rollins, Inc. v. Butland,*

    951. So. 2d 860 (Fla. 2d DCA 2006) ..................................................... 11, 13, 15

*Rollins, Inc. v. Heller,*

    454 So. 2d 580 (Fla. Dist. Ct. App. 1984) ..................................................... 11

*Savoca Masonry Co. v. Homes & Son Constr. Co.,*

    542 P.2d 817 (Ariz. 1975) ................................................................................ 5

*SEC v. Monterosso,*

    756 F.3d 1326 (11th Cir. 2014) ....................................................................... 3

*Socialist Workers Party v. Leahy,*

    145 F.3d 1240 (11th Cir. 1998) ..................................................................... 15

*Spicer v. Tenet Fla. Physician Servs., LLC,*

    149 So. 3d 163 (Fla. 4th DCA 2014) ............................................................... 6

*Spokeo, Inc. v. Robins,*

    578 U.S. 339 (2016) ....................................................................................... 16

*St. Joe Corp. v. McIver,*

    875 So. 2d 375 (Fla. 2004) ............................................................................... 5

*State ex rel. U-Haul Co. of W. Va. v. Zakaib,*

    232 W. Va. 432, 752 S.E.2d 586 (W. Va. 2013) ............................................. 9

*The Hill-Shafer P'ship v. Chilson Family Tr.,*

    799 P.2d 810 (Ariz. 1990) ........................................................................... 5, 9

*Thermolife Int'l LLC v. Bpi Sports LLC,*

    No. CV-20-02091-PHX-SPL, 2021 U.S. Dist. LEXIS 31700
    (D. Ariz. Feb. 19, 2021) ................................................................................ 17

*Thomas v. Montelucia Villas, Ltd. Liab. Co.,*

    302 P.3d 617 (Ariz. 2013) ............................................................................... 4

*TransUnion LLC v. Ramirez,*

    141 S. Ct. 2190 (2021) ..................................................................... 16, 17, 18

*United Cal. Bank v. Prudential Ins. Co.,*

    681 P.2d 390 (Ariz. Ct. App. 1983) ................................................................ 7, 8

*Urquilla-Diaz v. Kaplan Univ.,*

    780 F.3d 1039 (11th Cir. 2015) ...................................................................... 3

*Vega v. T-Mobile USA, Inc.,*

    564 F.3d 1256 (11th Cir. 2009) ...................................................................... 4, 4

*Vitale-Renner v. Sixt Rent A Car, LLC,*

    Case No. 20-62289-CIV-CANNON/Hunt, 2022 U.S. Dist. LEXIS 121322
    (S.D. Fla. July 5, 2020) ................................................................................ 4, 6, 7

*W. Distrib. Co. v. Diodosio,*

    841 P.2d 1053 (Colo. 1992) .......................................................................... 4

*Weatherguard Roofing Co. v. D.R. Ward Constr. Co.,*

    152 P.3d 1227 (Ariz. Ct. App. 2007) ............................................................ 7

*Whitmore v. Arkansas,*

    495 U.S. 149 (1990) ...................................................................................... 18

*Wooden v. Bd. of Regents Univ. Sys. of Ga.,*

    247 F.3d 1262 (11th Cir. 2001) ...................................................................... 16


**Statutes and Rules:**

Fed. R. Civ. P. 56 ...................................................................................................... 1, 3

Fla. Stat. § 95.11 ...................................................................................................... 19

Fla. Stat. § 501.211 .................................................................................................. 11, 13, 15, 17

Fla. Stat. § 501.212(3) .............................................................................................. 11

Fla. Stat. § 501.2105 ................................................................................................ 20

**INTRODUCTION**

Under Federal Rule of Civil Procedure 56(a), Defendant Sixt Rent A Car, LLC files this Motion for Summary Judgment as to all claims asserted by Plaintiffs Philippe Calderon, Ancizar Marin, and Kelli Borel Riedmiller in the Second Amended Complaint [ECF No. 151 ("SAC")], based on the Statement of Material Facts ("SUMF") and record evidence that is filed herewith.

Plaintiffs rented vehicles from Sixt. Sixt determined that its vehicles were damaged during Plaintiffs' rentals. Sixt sent each Plaintiff a claim letter demanding payment for the damage. The claim letters attached invoices itemizing Sixt's damages, including estimated or actual repair costs, diminished value, loss of use, appraisal costs, and administrative expenses. Sixt's itemized damage claims – what the SAC calls "Fees" or "Charges" – are the subject of this putative class action.

Plaintiffs contend that Sixt's claim letters and invoices listing the "Fees" breached their rental agreements (Count I of the SAC) and violated Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. ("FDUTPA") (Counts II and III of the SAC). Count I asserts that Sixt breached their rental agreements by demanding Fees that allegedly were not authorized by their rental agreements or allegedly were not calculated consistent with their agreements. Count II claims that Sixt violated FDUTPA by demanding Fees that allegedly were not authorized by Plaintiffs' agreements, allegedly were inflated, and/or allegedly were not actual losses. Count III asserts that Sixt violated FDUTPA by demanding estimated repair costs and loss of use when a vehicle damage was not repaired. Under these legal theories, Plaintiffs seek to recover amounts that non-parties paid for certain Fees as well as injunctive and equitable relief.

Summary judgment in Sixt's favor is warranted because three undisputed material facts established by the record disprove one or more essential elements of each of Plaintiffs' claims.

**First, Plaintiffs did not assent to the terms concerning the Fees that they claim were**

- 1 -

**breached.** Sixt's rental agreement is normally comprised of two separate documents: a Face Page that the customer signs; and a Terms and Conditions Rental Jacket, which contains the provisions that specifically address the Fees. Customers were normally shown paper copies of both documents before they signed the Face Page electronically. But Plaintiffs testified that they did not receive, and were not told how to access, the Terms and Conditions before they signed the signature pad. Because, by their own admission, Plaintiffs did not assent to the Terms and Conditions, its provisions concerning the Fees were not incorporated by reference into their rental agreements. Sixt cannot have breached any terms that were not part of Plaintiffs' agreements.

**Second, Plaintiffs admit that they did not personally pay any of the Fees at issue.** Calderon did not pay any of the Fees claimed by Sixt. Marin's company, not Marin himself, paid the administrative fee about which he complains. Similarly, Borel's employer paid the Fees claimed by Sixt. Plaintiffs thus cannot satisfy the causation and actual damage elements of their FDUTPA damage claims, and they lack Article III standing to pursue FDUTPA damage claims.

**Third, Plaintiffs are not at risk of suffering any future harm because Sixt does not have any claims against them and Sixt stopped trying to collect any money from them before this lawsuit was filed in September 2019**. Sixt cancelled its claim against Calderon and wiped out the balance of his account in January 2018. Any claim Sixt may have had against Calderon concerning his 2016 rental is time-barred. Sixt's claims against Marin and Borel were paid in full during the summer of 2019. Because there is no risk of any future harm to Plaintiffs, they do not have Article III standing to obtain injunctive or declaratory relief in federal court.

There is no genuine dispute as to these material facts, and Sixt is entitled to judgment as a matter of law; therefore, summary judgment should be entered in favor of Sixt and against Plaintiffs as to all of Plaintiffs' claims in Counts I, II, and III of the SAC.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and punctuation omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* (citation and punctuation omitted).

In deciding a motion for summary judgment, a court should "construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). But a court is not "constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-459 (11th Cir. 1994). "Speculation or conjecture cannot create a genuine issue of material fact, and a mere scintilla of evidence in support of the nonmoving party cannot overcome a motion for summary judgment." *Monterosso,* 756 F.3d at 1333. Rather, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Beal*, 20 F.3d at 459.

## ARGUMENT

**I.     Summary Judgment Should Be Granted In Sixt's Favor And Against Plaintiffs On Plaintiffs' Contract Claims In Count I Of The SAC.**

Plaintiffs rented cars in three different states: Calderon rented in Florida; Marin rented in Arizona; and Borel rented in Colorado. *See* SUMF ¶¶ 12, 45, 64. The laws of the states in which Plaintiffs rented vehicles from Sixt govern the formation and interpretation of their rental contracts. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (holding that Florida follows the *lexi loci contractus* doctrine).

The elements of a breach of contract that a plaintiff must prove in Florida, Arizona, and Colorado include: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citation omitted). *See also Thomas v. Montelucia Villas, Ltd. Liab. Co.*, 302 P.3d 617, 621 (Ariz. 2013); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The SAC contends that Sixt breached provisions of the Terms and Conditions Rental Jacket concerning the Fees. *See* SAC ¶¶ 102-112. Sixt's routine rental procedure at the time of Plaintiffs' rentals, when followed, provided the renter an opportunity to review paper copies of the Face Page and the Terms and Conditions before the renter used an electronic signature pad to sign the Face Page, which incorporated by reference the Terms and Conditions. *See* SUMF ¶¶ 1-11; *Vitale-Renner v. Sixt Rent A Car, LLC,* Case No. 20-62289-CIV-CANNON/Hunt, 2022 U.S. Dist. LEXIS 121322, at *6-9 (S.D. Fla. July 5, 2020) (post-trial findings concerning Sixt's rental process).

Here, however, the summary judgment record proves that Plaintiffs were not shown or told how to access the Terms and Conditions before they signed the signature pad and thus did not assent to the Terms and Conditions concerning the Fees. *See* SUMF ¶¶ 12-22, 44-54, 63-74. Because the provisions concerning the Fees were not incorporated by reference into their

agreements, it follows that Sixt cannot have breached those provisions and summary judgment should be entered in Sixt's favor on Plaintiffs' contract claims.

A.      **The Terms And Conditions Rental Jacket Was Not Incorporated By Reference Into Plaintiffs' Rental Agreements.**

An enforceable contract requires an "offer, acceptance, consideration, and sufficient specification of the essential terms." *Vega*, 564 F.3d at 1272 (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)). *See also Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975) (requiring "sufficient specification of terms so that the obligations involved can be ascertained"); *Doe v. Univ. of Denver*, Case No. 20CA1545, 2022 COA 57, ¶ 37, 2022 Colo. App. LEXIS 771 (Colo. Ct. App. May 26, 2022) (terms must be "sufficiently definite to enable the court to determine whether the contract has been performed or not") (citation omitted). And there must be mutual assent to those essential terms. *See David v. Richman*, 568 So. 2d 922, 924 (Fla. 1990); *The Hill-Shafer P'ship v. Chilson Family Tr.*, 799 P.2d 810, 814 (Ariz. 1990); *French v. Centura Health Corp.*, 2022 CO 20, Case No. 20SC565, 2022 Colo. LEXIS 366, ¶¶ 26-27 (Colo. May 16, 2022).

Here, the Face Page for each Plaintiff's rental refers to and purports to incorporate a Terms and Conditions Rental Jacket: "By signing below, you agree to the Terms and Conditions printed on the rental jacket and to the terms found on this Face Page, which together constitute this Agreement." *See* SUMF Exhibit A at Ex. 3; SUMF Exhibit F at Ex. 3; SUMF Exhibit G at Exs. 3 and 4. Whether the Terms and Conditions Rental Jacket was incorporated into each Plaintiff's rental agreement depends on the law of the state where the rental occurred and the facts surrounding the execution of the Face Page. *See Fioretti*, 53 F.3d at 1235. Plaintiffs' testimony proves that the Terms and Conditions were not incorporated by reference into their agreements.

- 5 -

1.      **Calderon Was Not Provided The Terms And Conditions Before He Signed The Face Page.**

Under Florida law, for a collateral document to be incorporated by reference into an agreement, the agreement "must (1) specifically provide that it is subject to the incorporated [collateral] document and (2) the collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement so that the intent of both parties may be ascertained." *Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So. 3d 163, 166 (Fla. 4th DCA 2014) (alteration in original).

In denying Sixt's Motion to Dismiss Calderon's claims in the original Complaint, this Court held that Calderon's Face Page did not sufficiently describe the Terms and Conditions, and that whether Terms and Conditions were incorporated into Calderon's rental agreement is a question of fact. *See Calderon v. Sixt Rent a Car, LLC*, No. 19-cv-62408, 2020 U.S. Dist. LEXIS 24247, at *16-17 (S.D. Fla. Feb. 12, 2020). This Court further held that, for the Terms and Conditions to be incorporated by reference into the Face Page, Calderon had to "receive [the Terms and Conditions], or else be given clear direction on how to access it" before he signed the Face Page. *Id.* (citations omitted).

In the original Complaint, FAC, and SAC, Calderon alleged that he received the Terms and Conditions only after he electronically signed the Face Page. *See* Compl. [ECF No. 1] ¶¶ 54-58; [ECF No. 74] ¶¶ 62-70; SAC ¶¶ 37, 39. Consistent with those allegations, Calderon testified that he did not receive and was not shown the Terms and Conditions before he signed the signature pad. *See* SUMF ¶ 20. There is no direct testimony from the employee who assisted Calderon with his rental in the record that might contradict Calderon's testimony. *See Vitale-Renner*, 2022 U.S. Dist. LEXIS 121322, at *21-27 (post-trial opinion denying motion to compel arbitration based on findings that plaintiff did not agree to Sixt Terms and Conditions Rental Jacket because her

- 6 -

credible testimony that she did not receive any contract terms before signing anything at the rental counter trumped credible testimony from the Sixt employee, who could not recall her particular rental, concerning Sixt's routine practice of showing the contract terms to customers before they signed the Face Page). Therefore, the summary judgment record shows that, under Florida law, the Terms and Conditions were not incorporated by reference into and are not part of Calderon's rental agreement. *See Calderon*, 2020 U.S. Dist. LEXIS 24247, at *16-17; *Vitale-Renner*, *supra.*

### 2.  Marin Had No Notice Of The Terms And Conditions.

Under Arizona law, for an agreement to incorporate a collateral document by reference, the "reference must be clear and unequivocal and must be called to the attention of the other party, he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *United Cal. Bank v. Prudential Ins. Co.*, 681 P.2d 390, 420 (Ariz. Ct. App. 1983) (citation omitted). "While it is not necessary that a contract state specifically that another writing is 'incorporated by this reference herein,' the context in which the reference is made must make clear that the writing is part of the contract." *Id.* Arizona law does not require that the contracting party "see the incorporated document if the document is easily available." *Edwards v. Vemma Nutrition*, No. CV-17-02133-PHX-DGC, 2018 U.S. Dist. LEXIS 15371, at *9 (D. Ariz. Jan. 30, 2018) (citing *Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 152 P.3d 1227, 1230 (Ariz. Ct. App. 2007). But an incorporated document, even if it is easily available, will not be incorporated by reference if it is not called to the attention of the contracting party. *See Cottonwood Ctrs. Inc. v. Klearman*, No. CIV 18-252-TUC-CKJ, 2018 U.S. Dist. LEXIS 179047, at *12-16 (D. Ariz. Oct. 17, 2018) (citing) (terms and conditions that was emailed to contracting party with various attachments, including the agreement it signed, was not incorporated by reference because it was not called to the attention of the contracting party).

Like the contracting party in *Cottonwood*, the Terms and Conditions Rental Jacket was not

called to the attention of Marin and he had no notice of its provisions. Marin testified that when he signed the electronic signature pad, he had "no idea" what he was signing because it "was never explained." *See* SUMF ¶¶ 49-50. Marin also testified that he was never shown or handed a copy of the Face Page or the Terms and Conditions at any point during his rental. *See id.*, ¶¶ 51-54.

Had Marin been shown the Face Page or signed a paper copy of the Face Page that referenced the Terms and Conditions, he arguably would have been on notice of the Terms and Conditions and thus bound by its terms. *Compare Lucas v. Hertz*, 875 F. Supp. 2d 991, 998-99 (N.D. Cal. 2012) (renter who signed a paper rental agreement referencing conditions in a folder jacket was bound by the folder jacket's terms despite claiming that he never received or did not receive the folder jacket until after he signed the agreement) (applying California law, which has the same incorporation-by-reference standard as Arizona); *Greenley v. Avis Budget Grp., Inc.*, No. 19-cv-00421-GPC-AHG, 2020 U.S. Dist. LEXIS 54234, at *14 (S.D. Cal. Mar. 26, 2020) (same).

But unlike the renters in *Lucas* and *Greenley*, Marin did not sign a paper rental agreement and further testified that he was not shown the Face Page before he signed an "electronic black box." *See* SUMF ¶¶ 49-54. Marin testified that he had no idea what he was signing because it was not explained, and indicated that he thought he accepted the credit card charges by signing a black box. *See id.* Marin also testified that was not handed any documents after he signed the black box. *See id.* Because the Terms and Conditions were not called to Marin's attention at any point during the transaction and thus he could not have consented to those terms, Arizona law holds that the Terms and Conditions were not part of any contract between Marin and Sixt. *Cottonwood Ctrs. Inc. v. Klearman*, 2018 U.S. Dist. LEXIS 179047, at *12-16; *United Cal. Bank*, 681 P.2d at 420.

The Court need not decide in the context of this Motion whether the Face Page for Marin's rental is enforceable. Nonetheless, because Marin thought has was signing for the credit card

charges and Sixt thought Marin understood that he was signing the Face Page – Marin and Sixt (arguably) did not enter into a contract because the parties had a misunderstanding concerning their manifestations. *See Hill-Shafer*, 799 P.2d at 815 (discussing Rest. 2d Contracts § 20(1) and cmt. c (1979)). Either way, the Terms and Conditions were not incorporated into an agreement with Marin.

### 3. Borel Was Not Provided The Terms And Conditions Before She Signed The Face Page.

Under Colorado law, for a collateral document to be incorporated by reference into a contract, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *French*, 2022 Colo. LEXIS 366, ¶ 29 (holding that hospital chargemaster was not incorporated by reference because it was not mentioned by name in the patient's admission agreement and was not provided to the patient). "Accordingly, for contract terms outside the four corners of a contract to be incorporated by reference into the contract, the terms to be incorporated generally must be clearly and expressly identified." *Id.*, ¶ 30. "General or oblique references to a document to be incorporated, in contrast, are usually insufficient to support a finding that the document was incorporated by reference." *Id.*, ¶ 31 (citing, *inter alia*, *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 752 S.E.2d 586, 598 (W. Va. 2013) (mere mention of an addendum in preprinted and electronic rental contracts was insufficient to incorporate the addendum by reference because renters were not provided the addendum before they signed the rental contracts)).

Like the patient in *French*, and the renters in *Zakaib*, Borel was not provided a copy of or told how to access the Terms and Conditions before she signed the Face Page. *See* SUMF ¶¶ 70-71. Therefore, under Colorado law, the Terms and Conditions were not incorporated by reference into Borel's rental agreement. *See French*, 2022 CO 20, ¶¶ 29-31 (citing *Zakaib*, 752 S.E.2d at 598).

**B.      Sixt Cannot Have Breached Terms And Conditions Plaintiffs Did Not Accept.**

As a matter of hornbook contract law and common sense, "[t]he rights and duties of the parties … are created by the agreement." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999). "In the absence of an agreement, neither party has a duty to perform and neither party has a right against the other." *Id.* By logical extension, "a cause of action for breach … cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract." *Id.* at 1318.

For example, in *Burger King*, a franchisee brought breach of implied covenant claims against Burger King averring that it had improperly licensed new franchisees in his area. *See id.* at 1317-18. The Eleventh Circuit affirmed the district court's decision granting summary judgment against the franchisee's contract claim because the agreement did not grant the franchisee an exclusive territory and thus Burger King had no duty to refrain from licensing new franchisees in his area. *See id.* Simply put, Burger King could not have failed to fulfill a promise it never made.

The same result attains here. Plaintiffs' breach of contract claims rely exclusively on the Terms and Conditions concerning the Fees. *See* SAC ¶¶ 102-112. But the Terms and Conditions was not part of their rental agreements and thus was not binding on Sixt. *See supra* Argument § I.A. Sixt had no duty to comply with the provisions of the Terms and Conditions concerning the Fees and thus Sixt cannot have breached those terms. *See Burger King*, 169 F.3d at 1317-18.

Plaintiffs cannot prove that Sixt breached terms that were not part of their contracts. Summary judgment should be granted in Sixt's favor and against Plaintiffs on their contract claims.

**II.      Summary Judgment Should Be Granted In Sixt's Favor and Against Plaintiffs On Plaintiffs' FDUTPA Claims In Counts II and III Of The SAC.**

Florida law provides a private cause of action for damages when a consumer personally suffers a loss as a result of a FDUTPA violation: "In any action brought by a person who has

suffered a loss as a result of a violation of [FDUTPA], such person may recover actual damages…." Fla. Stat. § 501.211(2). An individual asserting a claim for damages under FDUPTA, must prove "three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951. So. 2d 860, 869 (Fla. 2d DCA 2006).

The actual damages claimed by a plaintiff must be direct damages, and not indirect, special, or consequential damages. *See Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984); *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (borrower could not recover any damages under FDUTPA against lender in foreclosure suit based on "lender's representations and nondisclosures [that] resulted in the borrower's inability to refinance the loan") (insertion added). Additionally, "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Butland*, 951 So. 2d at 873. *See also Mantz v. TRS Recovery Servs.*, No. 11-80580-CIV, 2011 U.S. Dist. LEXIS 129332, at *7 (S.D. Fla. Nov. 8, 2011) (plaintiff did not plead "actual damages" based on allegations of "'intentional infliction of emotional distress, anxiety and stress,' which are damages relating to personal injuries and thus barred under FDUTPA.") (citing Fla. Stat. § 501.212(3)).

For example, in *Jones v. TT of Longwood*, the plaintiff brought a FDUTPA claim against a car dealership after it required her to return a car she purchased. No. 6:06-cv-651-Orl-19DAB, 2007 U.S. Dist. LEXIS 57365, at *2-3 (M.D. Fla. 2007). A few days after the plaintiff took possession of the vehicle, the defendant informed her that her financing agreement had been rejected and demanded that she return the vehicle. *Id.* at *3-4. When she returned the vehicle, the Defendant refunded her down payment. *Id.* at *4. Plaintiff did not pay any amounts to rent the vehicle and did not pay for any insurance during the time she had the vehicle. *Id.* Plaintiff alleged that she was "emotionally crushed" when the defendant told her that her financing was rejected

and asked her to return the vehicle. *Id.* In granting summary judgment against her FDUTPA claim for damages, the court held that plaintiff did not suffer any "actual damage" because she did not have any "out-of-pocket losses." *Id.* at *19-20. *Jones* illustrates that "[s]ubjective feelings of disappointment are insufficient to form a basis for actual damages under [FDUTPA]." *Id. See also Himes v. Brown & Co. Sec. Corp.,* 518 So. 2d 937, 938 (Fla. 3d DCA 1987) (trial court properly denied recovery on FDUTPA claim because alleged lost profits were speculative and plaintiff "did not suffer any out-of-pocket damages"); *Haun v. Don Mealey Imps.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003) (dismissing FDUTPA claim because plaintiff "never paid for the vehicle (whether he thought he had at the time of the transaction is irrelevant to an element of *actual* harm) and he does not dispute that the dealer returned his deposit") (emphasis in original).

Plaintiffs contend that Sixt violated FDUPTA by sending them claim letters and invoices with various allegedly deceptive or unfair Fees. *See* SAC ¶¶ 115-118 (Count II), 125-130 (Count III). Yet Plaintiffs did not pay any of the allegedly deceptive or unfair Fees. *See* SUMF ¶¶ 27-28, 57-61, 77-78. Because Plaintiffs cannot prove that they suffered any actual damages that were caused by the allegedly deceptive or unfair conduct, Sixt is entitled to summary judgment on their FDUTPA damage claims. For the same reason, Plaintiffs do not have standing to pursue FDUTPA damage claims.

### A. Plaintiffs' FDUTPA Claims Fail Because They Did Not Suffer Any Actual Damages As A Result Of The Allegedly Deceptive Or Unfair Conduct.

#### 1. Calderon Did Not Pay Any Of The Fees At Issue.

The SAC does not allege that Calderon paid any of the Fees at issue and does not contend that Calderon suffered any actual damages. *See id.* at ¶¶ 120-121, 131-132. Calderon admitted in his deposition that he did not pay any of the Fees. SUMF ¶¶ 27-28. Because Calderon thus cannot prove that he "suffered a loss as a result of a violation of [FDUTPA]," summary judgment must

be granted against Calderon's FDUTPA damage claims. Fla. Stat. § 501.211(2); *Butland*, 951 So. 2d at 873 (persons "who experienced no actual loss have no claim for damages under FDUTPA").

Plaintiffs' Second Supplemental Initial Disclosures indicates that Calderon seeks to recover as "damages" the $29.97 that he paid for the Partial Damage Waiver ("PDW") that he purchased for his rental. SUMF ¶ 29. This attempt to transform Calderon's purchase of PDW at the start of the rental into "actual damages" that he allegedly suffered *ex ante* fails for three reasons.

First, Calderon cannot have been "damaged" by purchasing the PDW because he agreed to purchase PDW and he received the benefit of that bargain. *See* SUMF ¶ 15-17, 25-26. When Calderon selected and paid for PDW at the start of his rental, Sixt prospectively agreed to waive the first $500 of any damage to the rental vehicle that occurred during his rental. *See id.*, ¶¶ 15-17. After the rental ended, Sixt determined that Calderon's vehicle was damaged during his rental. *See id.*, ¶ 23. In compliance with the terms of the PDW, when Sixt calculated the amount Calderon owed for the damage, Sixt correctly deducted $500 from its claim against him. *See id.*, ¶¶ 25-26. Instead of demanding a total of $1,131.35 for damage to the rental vehicle and associated losses, Sixt waived $500 of its claim and asked Calderon to pay a total of $631.35. *See id.* Because Calderon agreed to pay for PDW and he received the benefit of what he purchased, Calderon was not "damaged." *See Maor v. Thrifty Auto. Group, Inc.*, Case No. 15-222959-CIV-MARTINEZ-GOODMAN, 2018 LEXIS 168664, at *18-30 (S.D. Fla. Sept. 30, 2018) (granting summary judgment against FDUTPA claim because defendant did not engage in deceptive conduct by charging an itemized fee that plaintiff agreed to pay for toll processing and plaintiff did not receive the allegedly deceptive disclosure concerning the fee until after the rental ended).

Second, Calderon's FDUTPA damage theory puts the cart before the horse. Calderon purchased the PDW at the start of his rental (the alleged "damage"), but Calderon did not receive

an invoice with the Fees until several months after his rental (the alleged "deception"). *See* SUMF ¶¶ 12, 24. The allegedly deceptive or unfair conduct in 2017 obviously did not cause Calderon to spend $29.97 to purchase PDW in 2016; therefore, he cannot seek to recover that purchase price under FDUTPA. *See Maor*, 2018 U.S. Dist. LEXIS 168664, at *20 ("the purported deception must be available to a reasonably objective consumer at the time he/she entered into the transaction").

Third, Calderon's contentions that PDW is a form of "insurance" and that he "paid" $500 of the Fees through the PDW are wrong. *See* SAC ¶ 38, 48. PDW is *not* a form of insurance. *See* SUMF ¶¶ 16-17. As the name implies, PDW is a "waiver," and unlike insurance, no benefits are paid to Sixt in the event of a loss. *See id.* When someone pays a premium to purchase insurance, the insurer agrees to pay a third party for any losses caused by the insured. But there was no insurer involved in this transaction and no money was paid to Sixt for the damage. *See id.* Sixt never received $500 from Calderon or any other source to cover its losses associated with the damage to his rental vehicle. *See id.*, ¶¶ 25-27. Quite the opposite: Six demanded less money from Calderon for the damage it suffered. *See id.* Calderon even admitted that he did not pay any of the Fees out of his own pocket, and that Sixt does not owe him any money back. *See id.*, ¶¶ 27-28.

Because Calderon cannot prove that the allegedly deceptive conduct caused him any actual damages, Sixt is entitled to summary judgment on his FDUTPA damage claims.

### 2.    Marin Did Not Pay Any Of The Fees At Issue.

The SAC falsely alleges that Marin "paid one or more of the … fees at issue." SAC ¶¶ 120, 131. Marin did not pay any of the Fees. *See* SUMF ¶¶ 57-61. In reality, Marin is trying to recover the $75.00 that Art by Ancizar, Incorporated paid to Sixt for administrative expenses. *See id.*, ¶¶ 60, 62. But non-party Art by Ancizar is a separate legal entity from Marin. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileged different from those of

the natural individuals who created it, who own it, and whom it employs"); *Am. States Ins. Co. v. Kelley*, 446 So. 2d 1085, 1086 (Fla. Dist. Ct. App. 1984) ("corporations are legal entities separate and distinct" from their owners). Marin has no legal right to recover the payment made by Art by Ancizar, Incorporated, and Marin did not personally suffer a loss when Art by Ancizar made that payment. Because Marin cannot prove that the allegedly deceptive conduct caused him to "suffer[] a loss," Sixt is entitled to summary judgment on his FDUTPA damage claims. Fla. Stat. § 501.211(2); *Butland*, 951 So. 2d at 873 (*supra*). *See also Caribbean Cruise Line, Inc. v. Better Bus. Bur. of Palm Beach Cty., Inc.* 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (FDUTPA claims require proof of an actual loss by the consumer in the transaction at issue).

### 3. Borel Did Not Pay Any Of The Fees At Issue.

The SAC also falsely alleges that Borel "paid one or more of the … fees at issue." SAC ¶¶ 120, 131. Borel did not pay any of the Fees. *See* SUMF ¶¶ 77-78. In truth, Borel wants to recover the $523.75 that her employer, Elope, paid to Sixt. *See id.*, ¶¶ 77-79. Non-party Elope is a separate legal entity from Borel. *See Cedric Kushner Promotions*, 533 U.S. at 163; *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003). Borel has no right to recover the payment made by Elope, and she did not personally suffer a loss when Elope made that payment. Because Borel cannot prove that the allegedly deceptive conduct caused her any actual damages, Sixt is entitled to summary judgment on her FDUTPA damage claims. Fla. Stat. § 501.211(2); *Butland*, 951 So. 2d at 873.

### B. Plaintiffs Lack Standing To Bring Damages Claims Under FDUTPA.

This Court's subject matter jurisdiction extends only to "cases" or "controversies" under Article III of the U.S. Constitution. *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998). "One aspect of this 'case or controversy' limitation is the doctrine of standing, which requires that the plaintiff show, among other things, that he has suffered an 'injury in fact'—some harm to a legal interest that is 'actual or imminent,' not conjectural or hypothetical." *Bowen v.*

- 15 -

*First Family Fin. Servs.*, 233 F.3d 1331, 1339 (11th Cir. 2000) (citations and internal punctuation marks omitted).

To establish Article III standing, a plaintiff must prove that he or she "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Not every statutory violation satisfies the concrete injury requirement because "an injury in law is not an injury in fact." *Id.* at 2205. Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 339, 341 (2016)).

"[J]ust as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent." *Wooden v. Bd. of Regents Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th Cir. 2001). A named plaintiff cannot establish standing by alleging that injuries have been suffered by unnamed putative class members. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). A named plaintiff also cannot "establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert." *Id.*

Named plaintiffs must prove that they have "Article III standing in order to recover individual damages." *See TransUnion*, 141 S. Ct. at 2207-08. Plaintiffs must maintain their standing "at all stages of the litigation." *Id.* And "*plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)*." *Id.* (emphasis added).

Here, Plaintiffs cannot prove that they have standing to pursue FDUTPA damage claims solely based on proof of an alleged FDUTPA violation. *See id.* at 2203-05. Rather, they must prove an actual concrete injury. *See id.* Because, as detailed above, none of them paid any of the Fees at

issue, they do not have standing to pursue FDUTPA damage claims. *See id.* at 2207-08. Accordingly, summary judgment should be granted against Plaintiffs' on their FDUTPA damage claims. *See Thermolife Int'l LLC v. Bpi Sports LLC*, No. CV-20-02091-PHX-SPL, 2021 U.S. Dist. LEXIS 31700, at *17 (D. Ariz. Feb. 19, 2021) (dismissing FDUTPA claim for lack of standing where plaintiffs had no concrete injury and had "not pled any actual damages to themselves").

**III.  Summary Judgment Should Be Granted In Favor Of Sixt And Against Plaintiffs On Plaintiffs' Requests For Injunctive And Declaratory Relief In All Counts Of The SAC.**

Plaintiffs seek injunctive and declaratory relief on their contract and FDUTPA claims. *See* SAC ¶¶ 113, 121, 122, 132. But Plaintiffs do not have standing to obtain injunctive or declaratory relief in this Court because there is no risk of future harm. *See TransUnion*, 141 S. Ct. at 2207-08. Summary judgment thus should be granted against Plaintiffs on their claims for equitable relief.

**A.  Plaintiffs Do Not Have Standing To Obtain A Declaratory Judgment Or Injunctive Relief Under FDUTPA.**

FDUTPA authorizes a person who is "aggrieved" by a FDUTPA violation to seek injunctive or declaratory relief. *See* Fla. Stat. § 501.211(1). Under their FDUTPA claims, Plaintiffs seek "a declaration that Sixt's conduct in charging … Fees is unfair and deceptive," and (2) "an injunction prohibiting Sixt from continuing to engage in the unlawful conduct," eliminating the "amounts allegedly owed or threatened to be turned over to collections," and barring Sixt from "assert[ing] the right to collect the charges." *See* SAC ¶¶ 100, 121, 132. However, Plaintiffs do not have standing to obtain such injunctive or declaratory relief in this Court because they cannot prove that they are likely to suffer any imminent future harm. *See TransUnion*, 141 S. Ct. at 2203.

"Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, … it cannot supplant Constitutional standing requirements," including Article III's requirement that a plaintiff must prove "a threat of future harm." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (citation

omitted). "Article III standing, as its name implies, is a constitutional requirement to bring any claim in federal court." *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 U.S. Dist. LEXIS 132399, at \*12 (M.D. Fla. July 27, 2020) (dismissing speculative FDUTPA claims because "the future injury requirement applies to all of Plaintiffs' claims seeking declaratory or injunctive relief"). "It makes no difference whether such claim is brought under state or federal law or is based on a statute or the Constitution." *Id.* Therefore, to obtain injunctive or declaratory relief under FDUTPA in federal court, Plaintiffs must prove that they have standing under Article III. *TransUnion*, 141 S. Ct. at 2203; *Dapeer*, 95 F. Supp. 3d at 1373.

A plaintiff seeking injunctive relief must prove an "actual and imminent" threat of irreparable harm. *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Similarly, in order to attain declaratory relief, a plaintiff must prove a "substantial continuing controversy" that is not "conjectural, hypothetical, or contingent; it must be real and immediate." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.* In short, a plaintiff may seek declaratory or injunctive relief only when he adduces evidence of "facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346-47 (11th Cir. 1999) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, (1983)). *See also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (holding that a "possible future injury do[es] not satisfy the requirements of Art. III, and that a "threatened injury must be 'certainly impending' to constitute injury in fact.") (citation omitted).

Plaintiffs cannot prove that there is a substantial likelihood that they will suffer any injury in the immediate future. Sixt's claims against Plaintiffs were fully resolved and their accounts were

closed *before* the original Complaint was filed in September 2019. [ECF No. 1]. Sixt cancelled its entire claim against Calderon and reduced the balance of his account to zero in January 2018. *See* SUMF ¶¶ 34-38. Sixt's claim against Marin was paid in full as of June 2019. *See id.*, ¶¶ 58, 60. And Sixt's claim against Borel was paid in full as of August 2019. *See id.*, ¶ 77. Sixt has not asserted any counterclaims against Plaintiffs in this case. *See id.*, ¶ 39. Sixt does not have any outstanding claims against Plaintiffs, and has no reason to pursue them in the future.

The SAC speculates that Calderon's credit is at risk and that Sixt may try to collect money from him in the future, directly or through a third-party collection company. *See* SAC ¶¶ 100, 121, 132. The record evidence squarely refutes that allegation. Calderon's account was never turned over to collections, and Sixt never filed a negative credit report with respect to Calderon. *See* SUMF ¶¶ 41-42. Calderon has not received any communication from Sixt about the claim in over five years. *See id.*, ¶¶ 32-33, 43. Sixt has not made any effort to collect money from Calderon since August 2017. *See id.*, ¶ 33. And because Sixt cancelled its entire claim against Calderon and zeroed out his account in January 2018, Sixt will not try to collect any amounts from him in the future. *See id.*, ¶¶ 34, 39. Calderon admitted that does not "expect to pay [Sixt] anything." *Id.*, ¶ 40. Indeed, any claims Sixt may have had concerning Calderon's April 2016 rental is barred by the applicable statutes of limitations—the longest of which expired over a year ago. *See* Fla. Stat. § 95.11(2)(b) (five-year limitations period for contact claims); Fla. Stat. § 95.11(3)(a) (four-year limitations period for claims for negligence and damage to personal property). Under these facts, Calderon cannot prove that he faces any risk of future harm. *Cf. Mendez v. Phillips & Cohen Assocs.*, No. 09-21467-CIV-GOLD/MCALILEY, 2009 U.S. Dist. LEXIS 138189, at *15 (S.D. Fla. Oct. 14, 2009) (dismissing FCCPA claim for injunctive and declaratory relief because "Plaintiff has failed to allege facts to demonstrate an immediate or definite future threat of injury

beyond the circumstances surrounding Defendant's attempts to collect a past debt.").

The SAC does not identify any potential future harm to Marin or Borel. Because Sixt's claims against them were paid in full, there is no risk that they will be turned over to collections, that a negative credit report will be filed against them, or that Sixt will contact them ever again to ask for additional payment for the damage to their rental vehicles. *See* SUMF ¶¶ 58, 60, 77.

Because Plaintiffs cannot prove that they are likely to suffer real and immediate future harm, they have no standing to seek equitable relief in this Court and summary judgment should be granted in Sixt's favor and against Plaintiffs on their FDUTPA claims for equitable relief.

### B. Plaintiffs Do Not Have Standing To Obtain A Declaratory Judgment Or Injunctive Relief Under Their Contract Claims.

With respect to their contract claims, Plaintiffs do not have standing seek a declaration concerning the provisions of the Terms and Conditions concerning the Fees because the Terms and Conditions were not part of their contracts. *See supra* Section I. And because there is no risk of future harm, Plaintiffs also do not have standing to seek injunctive or declaratory relief. *See supra* Section III.A. Summary judgment, therefore, should be granted in favor of Sixt and against Plaintiffs' on their contract claims to the extent that they seek equitable relief. *See Bowen*, 233 F.3d at 1340 (plaintiffs lacked standing to challenge arbitration agreements through injunctive or declaratory relief absent a "substantial likelihood" that the agreements would be enforced).

### CONCLUSION

For the foregoing reasons, Sixt respectfully requests that the Court grant this Motion for Summary Judgment, enter judgement against Plaintiffs and in favor of Sixt on all of the claims asserted in the Second Amended Complaint, dismiss the Second Amended Complaint with prejudice, award Sixt its reasonable attorney's fees and costs as the prevailing party on Plaintiffs' FDUTPA claims under Fla. Stat. § 501.2105, and grant any further relief it deems appropriate.

Respectfully submitted this 18th day of July, 2022.

/s/ *Irene Oria*
Irene Oria, Esq.
FL Bar No. 484570
FisherBroyles, LLP
199 E. Flagler St. #550
Miami, FL 33131
Tel.: (786) 536-2838
irene.oria@fisherbroyles.com

Patrick M. Emery, Esq. (admitted *pro hac vice*)
Lavender Hoffman Alderman, LLC
945 East Paces Ferry Rd NE
Suite 2000
Atlanta, GA 30326
(404) 793-0652
patrick.emery@lhalawyers.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 18, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<div align="center" style="text-align:right">

*/s/ Irene Oria*
Irene Oria, Esq.

</div>