UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-62408-CIV-SINGHAL

PHILIPPE CALDERON, ANCIZAR MARIN,
and KELLI BOREL RIEDMILLER, on behalf
of themselves and all others similarly
situated,

      Plaintiffs,

v.

SIXT RENT A CAR, LLC,

      Defendant.

_____/

## OPINION AND ORDER

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment, filed on July 18, 2022 (the "Motion") (DE [206]). Defendant filed an accompanying Statement of Material Facts ("DSOF") (DE [207]). Plaintiffs filed a Response (DE [220]) and accompanying Statement of Material Facts ("PSOF") (DE [222]) on August 17, 2022. Defendant filed a Reply and Reply Statement of Material Facts ("RDSOF") on September 7, 2022. The Motion is now ripe for this Court's consideration.

## I.  BACKGROUND

Plaintiffs bring the instant action against Defendant SIXT Rent A Car, LLC for its alleged unfair, deceptive, and unlawful conduct of imposing unauthorized repair charges on rental car customers in breach of its rental contracts with customers and in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"). *See* Second Am. Compl., at 1 (DE [151]). Plaintiffs allege Defendant organized a company-wide scheme to profit by

systematically charging unfair, deceptive, and unauthorized Estimated Repair Costs and other sham fees not permitted by the Rental Agreement. *Id.*

Plaintiffs allege Defendant's Rental Agreements with Plaintiffs are comprised of a (i) Face Page Contract and (2) Rental Jacket. *Id.* at 3. Plaintiffs further assert Defendant incorporated by reference the Rental Jacket into the Face Page Contract through the following language:

> . . . By signing below, you agree to the Terms and Conditions printed on the Rental Jacket and to the terms found on this Face Page, which together constitute this Agreement . . .

*Id.* at 3. Plaintiffs allege the Rental Jacket lists several fees and charges that Defendant can impose on customers for damage caused to the rental vehicle. *Id.* at 4. Moreover, the Rental Agreement indicates customers are "responsible for the cost of repair," "Loss of Use," "Diminished Value," and "administrative expenses incurred processing [a] claim." *Id.* However, Plaintiffs allege, Defendant breached these provisions and violated FDUTPA by charging customers for repairs that never took place and otherwise improperly inflating fees charged to customers. *See generally* Second. Am. Compl. (DE [151]).

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[1] *see also Alabama v.*

---

[1] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

*North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

## III.  DISCUSSION

Defendant seeks summary judgment on several grounds. First, Defendant argues summary judgment is appropriate on Plaintiffs' contract claims because

the Terms and Conditions sued upon were not incorporated by reference into Plaintiffs' rental agreements as a matter of law based upon the undisputed facts. Second, Defendant argues summary judgment is proper on Plaintiffs' FDUTPA claims because the undisputed facts show Plaintiffs did not suffer actual damages as a result of unfair or deceptive conduct. Third, Defendants seek summary judgment on Plaintiffs' injunctive and declaratory relief claims because Plaintiffs lack standing to obtain either form of relief under both their contract claims and FDUTPA claims.

### A. Breach of Contract Claims

Plaintiff Calderon rented his vehicle in Florida, Plaintiff Marin rented in Arizona, and Plaintiff Borel rented in Colorado. *See* DSOF ¶¶ 12, 45, 64; PSOF ¶¶ 12, 45, 64. Because the State of Florida follows the doctrine of *lexi loci contractus*, the law of the state in which each Plaintiff rented their vehicle from Defendant determines the interpretation and enforceability of the rental contracts. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995). The Second Amended Complaint alleges that Defendant breached provisions of the Terms and Conditions Rental Jacket concerning Fees. *See* Second. Am. Compl. ¶¶ 102–112. It is undisputed by the parties that Defendant's routine rental procedure at the time of Plaintiffs' rentals provided the renter an opportunity to review paper copies of the Face Page and Terms and Conditions before the renter used an electronic signature pad to sign the Face Page, which incorporated the Terms and Conditions by reference. *See* DSOF ¶¶ 1–12; PSOF ¶¶ 1–12. Here, however, it is mostly undisputed that Plaintiffs were not shown or told how to access the Terms and Conditions before they signed the signature

pad. *See* DSOF ¶¶ 12–19, 21, 22, 44–52, 54, 63–69, 71–74; PSOF ¶¶ 12–19, 21, 22, 44–52, 54, 63–69. The only disputed points concern testimony where Plaintiffs could not recall whether they were shown the Terms and Conditions prior to signing. *See* PSOF ¶¶ 20, 53, 70. Plaintiffs cite no record evidence that could support the inference that Plaintiffs were shown the Terms and Conditions before signing. Therefore, it is undisputed that Defendant Sixt departed from its routine procedure with regard to Plaintiffs' rentals because it failed to show Plaintiffs the Terms and Conditions or tell Plaintiffs how to access them before signing. Based on this undisputed factual record, the Court must determine whether the Terms and Conditions are part of each Plaintiff's rental contract.

       1.  <u>Calderon</u>

Under Florida law, to incorporate by reference a collateral document into an agreement, the agreement must (1) specifically provide that it is subject to the incorporated document and (2) sufficiently describe or refer to the collateral document so that the intent of both parties is ascertained. *Spicer v. Tenet Fla. Physician Servs., LLC*, 149 So. 3d 163, 166 (Fla. 4th DCA 2014). This Court previously held that Calderon's Face Page did not sufficiently describe the Terms and Conditions. *See* (DE [30], at 11–12). Moreover, this Court continued that the Terms and Conditions could thus only be incorporated by reference into the Face Page if Calderon "receive[d] [the Terms and Conditions], or else [was] given clear direction on how to access it" before signing. *Id.* at 12.

The undisputed factual record reveals there is no evidence Calderon received or was shown the Terms and Conditions before signing. *See* DSOF ¶ 20; PSOF ¶ 20. Calderon testified he did not recall being shown or given "any paperwork" before he

signed the rental contract. *Id.* And there is no other record evidence that could support the inference Calderon received the Terms and Conditions or was given clear direction how to access them before signing. Thus, the Court finds Plaintiffs cannot prove the Terms and Conditions were incorporated by reference into the Face Page as a matter of Florida law.

2. Marin

Under Arizona law, an agreement incorporates by reference a collateral document if (1) the reference is "clear and unequivocal," (2) it is "called to the attention of the other party [who] consents thereto," and (3) "the terms of the incorporated document [are] known or easily available to the contracting parties." *United Cal. Bank v. Prudential Ins. Co.*, 681 P.2d 390, 420 (Ariz. Ct. App. 1983) (cleaned up). Arizona law does not require a contracting party "see the incorporated document if the document is easily available." *Edwards v. Vemma Nutrition*, 2018 WL 637382, at *3 (D. Ariz. Jan. 30, 2018) (citing *Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 152 P.3d 1227, 1230 (Ariz. Ct. App. 2007)). But an incorporated document, even if readily available, will not be incorporated if not called to the attention of the contracting party. *See Cottonwood Ctrs. Inc. v. Klearman*, 2018 WL 5084657, at *6 (D. Ariz. Oct. 17, 2018).

The undisputed factual record indicates Plaintiff Marin testified that when he signed the signature pad, "an electronic black box," he had "no idea" what he was signing because it "was never explained." DSOF ¶¶ 49–52; PSOF ¶¶ 49–52. Marin further testified he was not shown or handed any papers before signing. DSOF ¶ 51; PSOF ¶ 51. No record evidence supports the inference he was shown a copy of the Face Page or Terms and Conditions before signing. In fact, Marin testified he only thought his signing the signature pad indicated his acceptance of the credit card charges for the rental. *See*

DSOF ¶ 49; PSOF ¶ 49. Even if we assume the language in the signature box clearly and unequivocally referenced the Terms and Conditions and called them to Marin's attention, there is still no evidence in the factual record to support an inference that the Terms and Conditions were either known or available to Marin. Accordingly, the Court finds the Terms and Conditions were not incorporated by reference into Marin's rental contract under Arizona law.

### 3. Borel

Under Colorado law, an agreement incorporates by reference a collateral document if (1) it is "clear that the parties to the agreement had knowledge of and assented to the incorporated terms," and (2) the incorporated terms are "clearly and expressly identified." *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022). "General or oblique references to a document to be incorporated . . . are usually insufficient to support a finding that the document was incorporated by reference." *Id.* at 450.

Here, Plaintiff Borel does not recall whether she received a copy of or was told how to access the Terms and Conditions prior to signing the signature pad. *See* DSOF ¶¶ 70–71; PSOF ¶¶ 70–71. Borel testified that she recalled receiving the receipt, which contained the Terms and Conditions, for the first time when she received the keys to her rental vehicle. *Id.* Thus, Plaintiffs cannot prove Borel had knowledge of, let alone assented to, the Terms and Conditions because there is simply no record evidence that could support an inference that she received or had access to the Terms and Conditions before signing. The only record evidence—Borel's testimony—tends to prove she did not receive the Terms and Conditions until after signing. And even if we assume she did receive or have

access to the Terms and Conditions before signing, the signature pad's "[g]eneral [and] oblique reference[]" to the Terms and Conditions is likely "insufficient to support a finding that the document was incorporated by reference." *See French*, 509 P.3d at 450. Accordingly, the Court finds the Terms and Conditions were not incorporated into Borel's rental contract under Colorado law.

4.  Estoppel Arguments

Having found the Terms and Conditions are not incorporated into any of the Plaintiffs' rental contracts, the Court next addresses other arguments in support of incorporation. Plaintiffs first argue Defendant Sixt is contractually estopped from claiming the terms and conditions are unenforceable because contracting parties are generally estopped from denying a specific term, fact, or performance arising from that contract. Moreover, Plaintiffs argue the Face Page shows Defendant intended to be bound by the Terms and Conditions because they included reference to it in the Face Page. This intent to be bound, Plaintiffs argue, is evidenced by the fact Defendant sought to enforce the Terms and Conditions against Plaintiffs. Second, Plaintiffs separately argue Defendant is estopped from claiming Plaintiffs did not assent to the Terms and Conditions because they previously argued the opposite position in the course of this action.

a.  Contractual Estoppel

Plaintiffs cite a patent law treatise and Federal Circuit case for the proposition that a party that has entered into a contract is estopped from denying a term, fact, or performance arising from the contract. *See* Response, at 7–8. Plaintiffs cite no authority from Florida, Arizona, or Colorado for this proposition. Under traditional principles of contract law, denying a term, fact, or performance arising from a contract could be construed as breach of contract, entitling the

non-breaching party to numerous breach of contract remedies, including specific performance. However, the Court does not see how Plaintiffs' argument applies here. Having found the Terms and Conditions to not be incorporated, they are not part of the contract. Accordingly, denying a term, fact, or performance arising under the Terms and Conditions is of no consequence. Moreover, Defendant's intent to be bound by the Terms and Conditions is of no consequence where the other requirements of incorporation by reference are not met as discussed *supra* section III.A.

b.  Judicial Estoppel

"Judicial estoppel is applied to the calculated assertion of divergent sworn positions." *Am. Nat. Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983) (citations omitted). And "[b]ecause this is a diversity case, the application of . . . judicial estoppel is governed by state law." *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995) (citations omitted). "Under Florida law, judicial estoppel applies only when a party maintains inconsistent positions in separate proceedings." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 n.7 (11th Cir. 2018) (citing *Fintak v. Fintak*, 120 So. 3d 177, 186–87 (Fla. 2d DCA 2013)). Thus, "judicial estoppel does not apply to inconsistent positions taken in the course of a single trial." *Searcy*, 902 F.3d at 1358 n.7.

Here, there is no separate proceeding where Defendant took an inconsistent position to the one it asserts here. Rather, Defendant previously took an inconsistent position at the beginning of this action based upon the information available to Defendant at that time. Following the course of discovery in this

action, the parties learned that Sixt did not in fact follow its routine rental procedure with regard to the individual Plaintiffs as Defendant had initially believed. At this point, the parties have now turned the chess board around and argue opposite positions on enforceability of the Terms and Conditions to what they argued at the case's onset. Defendant's position at this phase is not truly inconsistent with its position at the case's inception. Rather, Defendant's position at the beginning of the case was based on assumptions that turned out to be incorrect as revealed during discovery. Thus, Defendant has merely changed its position in light of new facts uncovered during discovery that have disproven the initial assumptions Defendant formed at the case's inception. That is exactly what a Motion for Summary Judgment requires. The doctrine of judicial estoppel does not forbid this.

### B. FDUTPA Claims

Fla. Stat. § 501.211 creates a private right of action for consumers "who [have] suffered a loss as a result of a violation of [the statute]." Fla. Stat. § 501.211(2). Under this provision, individuals "may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105." *Id.* To bring a consumer claim for damages under the FDUTPA, a plaintiff must prove (1) a deceptive or unfair practice, (2) causation, and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (citations omitted). A "plaintiff may recover only actual damages incurred as a consequence of a violation of the statute" and may not recover "nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (cleaned up). And critically, "[t]here can be no monetary recovery under the FDUTPA where the plaintiff

has suffered no out-of-pocket losses." *Jones v. TT of Longwood, Inc.*, 2007 WL 2298020, at *7 (M.D. Fla. Aug. 7, 2007) (citing *Himes v. Brown & Co. Secs. Corp.*, 518 So. 2d 937, 938 (Fla. 3d DCA 1987)). If a plaintiff subjectively believes he paid for a good or service (that allegedly violates FDUTPA), but has not actually paid or otherwise incurred an out-of-pocket loss, there can be no finding of actual damages because "whether [a plaintiff] thought he had [paid] at the time of the transaction is irrelevant." *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003).

Here, all Plaintiffs admit they did not personally pay out-of-pocket any of the fees at issue. *See* DSOF ¶¶ 27, 58–61, 77–78; PSOF ¶¶ 27, 58–60, 61 (confirming Marin's own company paid fees in connection with the invoice sent to Marin personally), 77–78. Calderon testified he never paid any of the charges invoiced by Sixt for damage to his rental vehicle. *See* DSOF ¶ 27; PSOF ¶ 27. For Plaintiffs Marin and Borel, each of their companies paid the charges invoiced by Sixt to the Plaintiffs. *See* DSOF ¶¶ 58–61; PSOF ¶¶ 58–61. Thus, from this undisputed factual record, there is no basis to conclude any of the Plaintiffs incurred an out-of-pocket loss.

Plaintiffs cite several Supreme Court cases to argue that standing is not defeated when third parties pay charges invoiced to plaintiffs where the third parties stand in the shoes of Plaintiffs. *See Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 286 (2008); *United States v. Am. Tobacco Co.*, 166 U.S. 468, 473–74 (1897). Yet both of these cases deal with the injury-in-fact element of Article III standing. The injury element here is that in the context of FDUTPA, not Article III standing. Plaintiffs very well could have suffered injury-in-fact under Article III while failing to have suffered actual damages under FDUTPA. Therefore, these Supreme Court decisions are inapplicable.

Plaintiffs additionally argue Calderon suffered actual damages through his purchase of a partial damage waiver. As stated above, under FDUTPA, a "plaintiff may recover only actual damages incurred as a consequence of a violation of the statute." *Barton*, 988 So. 2d at 86. Plaintiff purchased the partial damage waiver to waive responsibility for $500 of damage to the rental vehicle. *See* DSOF ¶¶ 15–17; PSOF ¶¶ 15–17. And he received the benefit of the bargain when Defendant in fact applied the $500 waiver to his assessed damage charges, *see* DSOF ¶ 25; PSOF ¶ 25, which he ultimately did not pay, *see* DSOF ¶ 27; PSOF ¶ 27. Accordingly, the Court finds no nexus between any alleged violation of FDUTPA and payment of the waiver because the Plaintiff received the benefit of the bargain for the waiver payment.

### C. Declaratory or Injunctive Relief under FDUTPA

Under Fla. Stat. § 501.211(1), "anyone aggrieved by a violation of [FDUTPA] may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate [FDUTPA]." Fla. Stat. § 501.211(1). Plaintiffs seek (i) declaratory judgment that Defendant's Fees are unfair and deceptive, and (ii) an injunction prohibiting Defendant from continuing to engage in the alleged unlawful conduct, eliminating the amounts allegedly owed, and barring Defendant from asserting or assigning the right to collect charges. *See* Second Am. Compl. ¶¶ 100, 121, 132. "Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction . . . it cannot supplant Constitutional standing requirements.   Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla.

2015) (citations omitted). "[T]o seek prospective or injunctive relief, plaintiffs (including individually named plaintiffs representing a class) must be able to demonstrate more than mere injury from past wrongs." *Id.* (citations omitted).

To obtain injunctive relief, a party must prove "irreparable harm and inadequacy of legal remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (cleaned up). "The injury must be neither remote nor speculative, but actual and imminent." *Id.* (cleaned up). "An injury is irreparable only if it cannot be undone through monetary remedies." *Id.* (cleaned up). To obtain declaratory relief, a party must show "a substantial continuing controversy between the parties" that is not "conjectural, hypothetical, or contingent," but must be "real and immediate." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (cleaned up). "The remote possibility that a future injury may happen is not sufficient to satisfy the actual controversy requirement for declaratory judgments."

As an initial matter, Plaintiffs impliedly concede that Plaintiffs Borel and Marin lack standing to seek equitable relief because Sixt's claims against them were paid off by third parties. *See* Response, at 16–18. Thus, there is no possibility of future collection attempts and thus no basis for equitable relief for these Plaintiffs.

With regard to Calderon, Plaintiff's PSOF states Defendant cancelled its entire claim against him and reduced the balance of his account to zero in its internal computer system in January 2018, over a year before the instant action was filed. *See* (DE [1]); PSOF ¶ 34. The parties only dispute whether a cancellation notice or phone call was made to Calderon. *See* DSOF ¶¶ 35–38;

PSOF ¶¶ 35–38. Even assuming no cancellation notice was sent to Calderon, the Court finds there is simply no record evidence that could support a finding of actual or imminent threat of collection attempts or assignments by Defendant. Rather, the record evidence tends to prove the opposite—the threat of collection attempts or assignments is remote and speculative because Defendant's internal system reveals the account was closed long before the instant action was filed. Moreover, even assuming arguendo there was an actual or imminent threat of future collection, this would not rise to the level of irreparable harm because it could almost certainly be undone through monetary remedies. Second, for these same reasons, no record evidence could support a finding of a continuing controversy between the parties that is real and immediate. Instead, the possibility of future collection attempts or assignments is highly remote given that Defendant cancelled the claim and eliminated the balance over a year before the present action was even filed. Plaintiffs assert there is "no factual guarantee by Sixt" that collection attempts will not occur in the future. *See*, Response, at 17. However, "no factual guarantee against injury" is not the standard to obtain declaratory or injunctive relief.

### D. Declaratory or Injunctive Relief under Breach of Contract Claim

For the reasons discussed *supra* section III.A., Plaintiffs do not have standing to seek equitable relief concerning the cited portions of the Terms and Conditions because the Terms and Conditions were not incorporated by reference into any of their contracts. And Plaintiffs cannot have "representative" standing to pursue equitable relief on behalf of a putative class when they personally lack standing. *See Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*,

247 F.3d 1262, 1288 (11th Cir. 2001) ("just as a plaintiff cannot pursue an individual claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise the claims of the class he seeks to represent.").

For the reasons discussed above, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE [206]) is **GRANTED**. The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions. Final judgment will be entered separately pursuant to Fed. R. Civ. P. 58. Defendant shall submit a Proposed Final Judgment in Word format to Chambers email by September 28, 2022.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 20th day of September 2022.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel via CM/ECF